EVERETT v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO.

1. **Railroads:** TIME TO PROCURE TICKETS: EXTRA CHARGE ON TRAIN. Section 2, chapter 68, Laws of 1874, provides that "a charge of ten cents may be added to the fare of any passenger, where the same is paid upon the cars, if a ticket might have been procured within a reasonable time before the departure of the train." *Held* that, in order to justify the company in demanding the extra charge, and in ejecting a passenger who refuses to pay it, it is not necessary to keep the ticket office at a small station open until the very moment of the departure of the train. All that a passenger can demand is that he have a reasonable opportunity to purchase a ticket; and, in determining whether such opportunity was given in this case, it was proper for the jury to consider the character of the station, and whether the facilities for purchasing tickets were such as were required for the convenience of the public at that place.

2. ———: EJECTMENT OF PASSENGER: PLACE OF EJECTMENT. It is not required in this state that, where a person may rightfully be ejected from a railroad train, it must be done at a station or public crossing. (Compare *Brown v. Railway Co.*, 51 Iowa, 235.)

3. **Evidence:** OF MATTER NOT PLEADED. Evidence of a matter not pleaded was properly excluded.

*Appeal from Pottawattamie District Court.*

WEDNESDAY, JUNE 9.

ON the morning of August 18, 1881, the plaintiff took passage on defendant's railroad at a small station named

Weston, intending to travel to Council Bluffs, a distance of ten miles. He did not procure a passenger ticket, and the conductor of the train demanded ten cents in addition to the ticket rate, which the plaintiff refused to pay. Thereupon the conductor caused the train to be stopped, and he forcibly ejected the plaintiff therefrom. This action was brought to recover damages for the alleged wrongful act of the conductor in removing the plaintiff from the train. A trial by jury resulted in a verdict and judgment for the defendant. Plaintiff appeals.

*Sapp & Pusey*, for appellant.          , vs

*Wright, Cummins & Wright* and *Wright, Baldwin & Haldane*, for appellee.

ROTHROCK, J.—I. It is provided by section 2 of chapter 68 of the Laws of 1874 (Miller's Code, 347) that "a charge

1. RAILROADS: time to procure tickets: extra charge on train.

of ten cents may be added to the fare of any passenger, where the same is paid upon the cars, if a ticket might have been procured within a reasonable time before the departure of the train." The ground upon which the plaintiff based his refusal to pay the ten cents demanded by the conductor was that he was prevented from procuring a ticket, because the ticket office was closed when he presented himself for the purpose of purchasing a ticket. The facts are that the plaintiff is the owner of a large farm some five miles from Weston. His residence is at Council Bluffs, and he made frequent visits to his farm, going by rail by the way of Weston. He knew that the defendant was authorized to collect ten cents, in addition to the ticket rate, from passengers who neglected to purchase tickets at the station. Weston is a small and unimportant station at which an inconsiderable amount of business is done by the railroad company, either in freight or passenger traffic. As is usual at such places, the company keeps no

assistant for the agent; and, when a train arrives, the agent leaves the ticket office, and goes upon the platform of the station to transact his business with the train; such as seeing to the loading of the mail on the train, the receipt and delivery of baggage and express packages, and the like. The plaintiff came in from his farm in the morning, and stopped at a store in the village until he heard the whistle of the train as it approached the station, when he went to the station, and arrived there just before the train came to a full stop. The ticket agent had the office open for a considerable time before the train arrived, and sold tickets to passengers, and he did not leave the office until the engine to which the train was attached had passed the office window, when he went on the platform to attend to his train duties. The train stops at that station only long enough to do the train business and allow passengers to get on and off the cars.

The court permitted all these facts to be shown to the jury, and charged the jury to the effect that if, under all these facts and circumstances, a reasonable time was given to passengers to purchase tickets before the departure of the train, the conductor was authorized to demand the extra ten cents of the plaintiff. One of the instructions to the jury was as follows: "(6) The fact, if it is a fact, that the plaintiff applied at the defendant's ticket office at Weston to purchase a ticket at a time when it was closed, does not of itself alone necessarily show that opportunity was not given within a reasonable time before the departure of the train for the purchase of tickets; nor can it be said, as matter of law, that the defendant had a right to close its ticket office as soon as the train arrived at the station. The question, what is a reasonable time for the procuring of tickets before the departure of trains from a station, depends principally on the requirements, convenience and demands of the public at that particular station. It was the duty of defendant to keep its ticket office open, and to keep a competent man there to sell tickets at such times as would reasonably, fairly and fully accommodate the public in the

matter of procuring tickets. Regard should be had to the importance of the station, and the number of people who have occasion to purchase tickets there; and the ticket office should be kept open at such times as people in general who travel by rail are in the habit of repairing, and find it convenient to repair, to the station to purchase tickets and get aboard the train."

Counsel for appellant insist that this and other instructions given by the court to the jury are erroneous. They claim that, under a proper construction of the statute above cited, it was the duty of the railroad company to keep its ticket office open up to the time of the departure of the train; in other words, they claim that by the very terms of the statute the office must be kept open for the sale of tickets just so long as it is possible for passengers to purchase tickets and board the train. Assuming this to be the meaning and intent of the statute, they contend that it was error for the court to submit to the jury the question whether, under the facts, the office was kept open a reasonable time in which passengers might procure tickets. We do not think this position is sound. In our opinion, it was proper to allow the defendant to introduce evidence of the character of the station, and whether the facilities extended to the traveling public to purchase tickets were such as were required for the convenience of the public. It would be a most unreasonable requirement to impose upon the defendant the burden of employing two persons to attend to the station in order that the ticket office might be kept open for the one or two minutes which a train is required to stop at such a station, in order to accommodate the exceptional cases of passengers who may for any reason arrive at the station after the arrival of the train. Regard must be had to the orderly transaction of the business of the station, taking into consideration the necessary and proper facilities extended to persons having occasion to travel on the trains or transact other business with the company. It is absolutely necessary that the office should be

open for business a sufficient time before the departure of the train, in order to enable passengers to procure their tickets, receive and count their change, if any, and prepare to board the train, without unnecessary interference with each other. But the language " before the departure of the train " does not require that the office shall remain open up to the instant the train moves off. The question is, might the passenger have procured a ticket within a reasonable time *before* the departure, and *not* up to the very moment when the wheels began to move.

II. Some complaint is made as to the place where the plaintiff was ejected from the cars. It appears that it was

2. ——: ejectment of passenger: place of ejectment.

half a mile from a public crossing. It is not required in this state that, where a person may rightfully be ejected from a railroad train, it must be done at a station or public crossing. *Brown v. Railroad Co.*, 51 Iowa, 235. In the case at bar, all of the facts attending the removal of the plaintiff from the train, and the place where he was removed, were fairly submitted to the jury on what we regard as proper instructions; and the jury, in answer to a special interrogatory, found that the conductor did not act with malice, express or implied, towards plaintiff in ejecting him from the train. We think this finding was fully supported by the evidence.

III. The plaintiff offered to introduce evidence to the effect that the defendant's station was an unfit place for pas-

3. EVIDENCE: of matter not pleaded.

sengers to remain in waiting for trains because of the close proximity of a privy. The evidence was excluded, and plaintiff's counsel complain of this ruling of the court. We think it was correct. The plaintiff did not allege this as a reason why he did not go to the station and procure a ticket, and he made no such claim to the conductor. His sole ground of recovery was based upon the alleged fact that he could not procure a ticket because the office was closed.

We think the judgment of the district court should be

AFFIRMED.