CASE 106—PETITION ORDINARY—SEPTEMBER 30.

# Snellbaker v. Paducah, &c., R. Co.

### APPEAL FROM M'CRACKEN COURT OF COMMON PLEAS.

A REGULATION OF A RAILROAD COMPANY REQUIRING A PASSENGER EN-
TERING A TRAIN WITHOUT A TICKET TO PAY TWENTY-FIVE CENTS
EXTRA FARE, this sum to be refunded upon the presentation to any
ticket agent on the road of a "rebate check," furnished by the con-
ductor, was not unreasonable; and where a passenger, with knowl-
edge of the rule, and with knowledge of the fact that there was no
ticket office at the station for which he was destined, failed, before
starting on his journey, to buy a round-trip ticket, which he knew
he could procure, he can not complain that upon his return he was
ejected from the train on his refusal to pay the twenty-five cents
extra fare required by the regulation of the company.

C. H. THOMAS FOR APPELLANT.

While a carrier of passengers may, in good faith, with a view of facili-
tating business, adopt a rule which requires a traveler to purchase
a ticket before entering upon his journey, and upon his failing
to do so may charge and collect additional fare, when paid on the
train, yet, as a condition precedent, it is the duty of the carrier to
establish a depot at a convenient place, and provide it with tickets
and a ticket agent, who shall be in his office ready and willing to wait
on the traveler who may call for a ticket, a reasonable length of time
before the departure of the train. (Hutchinson on Carriers, 2nd ed.,
sec. 571; Porter v. The Railroad, 34 Barb., 353; De Lamaus v. The
Railroad, 15 Minn., 49; St. Louis, &c., Railroad v. Myrtle, 51 Ind.,
566; State v. Hungerford, 39 Minn., 6; Everett v. Railroad Co., 69
Iowa, 15; Chicago, &c., R. Co. v. Parks, 18 Ill., 460; St. Louis, &c.,
R. Co. v. Dolby, 9 Ill., 353; Chicago, &c., R. Co. v. Flagg, 43 Ind.,
364; Nellis v. The Railroad, 30 N. Y., 505; Ill. Cent. R. Co. v. John-
son, 67 Ill, 312; Ill. Cent. R. Co. v. Cunningham, 67 Ill., 316;
Missouri Pac. R. Co. v. McClannahan, 66 Texas, 530; Southern R.
Co. v. Hinsdale, 38 Kansas, 507; Brown v. Railroad Co., 38 Kan.,
634; White v. Railway Co., 26 W.·Va., 800; Hall v. Railway Co., 25
S. C., 564; Thompson on Carriers, 319; Jeffersonville R. Co., v. Rog-
ers, 28 Ind., 1; Chase v. The Railroad, 26 N. Y., 523; Croker v. The
Railway Co., 24 Cow., 249; Wilsey v. L. & N. R. Co., 83 Ky., 511.)

And the same rule applies with reference to a rebate ticket that
applies with reference to an additional fare when paid on the train.

Snellbaker v. Paducah, &c., R. Co.

(Poole v. The Railroad, 16 Oregon, 261; Reese v. Penn. R. Co., 131 Pa. St., 422; 19 Atl. Rep., 72.)

REED AND HUSBANDS & HUSBANDS FOR APPELLEE.

The appellant, by hailing the train at a point where trains stopped only as a matter of grace, and taking passage, with a knowledge of the regulation of which he now complains, thereby tacitly agreed to comply with the rule, and failing to do so the conductor was authorized to put him off the train.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Upon his refusal to pay the conductor of the appellee twenty-five cents in addition to the usual fare between the station at which he took passage and that of his destination on the line of appellee's road, the appellant was ejected from the passenger coach of the appellee. He sued for damages, and upon a trial of the case, the jury found a verdict for the appellee. The appellant's motion for a new trial, based upon various grounds, having been overruled, he has appealed to this court.

The facts established by the proof and necessary to be considered by us in testing the accuracy of the instructions of which the appellant seriously complains, are about these: Upon the completion of its road in 1890, the appellee established a number of stations between Paducah in this State and Paris, Tenn., these being its terminal points. Some of these were ticket stations and others not, being known as mere flag stations. A rule or regulation was promulgated when it began business, and of which notice was given, to the effect that passengers entering the train without tickets would be required to pay twenty-five cents extra fare. This sum, however, was to be refunded to them upon presenting to any ticket agent

on the road, what was called a "rebate check," which was to be furnished the passenger by the conductor when he collected the cash fare.

Of the location and nature of these flag and ticket stations, and of this rule of the appellee, the appellant, from the proof, had ample knowledge. He was a large lumber dealer, quite a traveler, and, from his own statements, had studied this rebate question. In a discussion with some of the employes of the appellee a few days only before he embarked on the trip resulting in his expulsion from the train, he had declared that the rebate system was unlawful, and that every man who had been put off for non-payment of this excess had recovered damages. Round trip tickets were kept for sale at Paducah and other ticket stations for all points on the road, and of this the appellant must have known, as he had traveled over this road, and on divers occasions had gone out from Paducah to flag and ticket stations thereon, using on one or more trips "the rebate check." He resided at Paducah, and on the morning of June 4, 1891, bought a ticket to "Oaks," the first station south of that city, and some nine and one-half miles distant. Upon his request he was allowed, without further charge, to go on to Burkholdersville, about one and one-half miles further, where a large saw-mill was being operated, and where he had business. After transacting his business, he started to walk back to Oaks, the regular flag station, when he was informed by Judge Burkholder that he intended flagging the train at the mill, and he could then take passage.

He did so, and when he was approached on the train

for his fare he offered the usual sum to the conductor. Some discussion ensued, the conductor explaining his situation and the necessity for obeying the rules of his superior officers, and the appellant insisting that he knew the law of the case and his rights in the premises. The dispute ended in the courteous expulsion of the appellant from the train, without rudeness or violence, beyond the gentle laying of the conductor's hands on the appellant's arm and politely helping him down the steps of the train, at or near "Oaks," from which point the appellant walked to Paducah and instituted his action.

Upon this state of case the court instructed the jury to find for the plaintiff, unless they believed, from the evidence, that the appellee had adopted the rule or regulation, the nature of which we have explained, and that return or round-trip tickets were kept for sale at Paducah, for "Oaks," and that the appellant, prior to his trip, knew of the rule and of the fact that such tickets were kept; in which event they were to find for the appellee. An additional instruction defining the measure of damages was given, and one charging them to find only actual damage if they believed that the appellant had purposely taken passage on the train in order to be ejected, and for the purpose of instituting suit. The first instruction is the only one we need notice.

If the appellant, before starting on his trip, knew that he would be required to pay twenty-five cents extra upon being found without a ticket, either as he went to or returned from "Oaks," and that he could purchase at Paducah, if he desired, a ticket

to Oaks and back, and thus avoid this deposit of twenty-five cents, upon what principle shall he be allowed to complain of his failure to buy a return ticket? Certainly upon none, unless the requirement of the regulation is unreasonable. Whatever knowledge may be attributed to him of the location of these stations and of the rules and regulations of the company, he is not bound to comply with them if they are oppressive or unreasonably inconvenient to him. But what is there unreasonable or oppressive in this rule? The passenger does not, in fact, pay a cent additional fare, and the inconvenience of presenting his "rebate check" at the end of his journey and getting his money, is not more than the inconvenience of paying his money and getting his ticket when he starts on his trip; and that he may be required to so purchase his ticket before entering the train is admitted on all hands. Even additional fare is allowed to be collected and retained if a passenger fails to provide himself with a ticket when he can do so. It constantly occurs that when round trip tickets are on sale and a careless passenger fails to buy one, and his co-traveler does buy, the one pays more than the other for being carried the same distance. In this case the appellant actually paid no more, and only subjected himself to a very slight inconvenience, while to the road the rule was obviously of great pecuniary importance.

But it is urged that there being no ticket station at Oaks, the appellant could not have bought a ticket en route home, and ought not to be inconvenienced

by not having one.    The answer is, there was a station
at the starting point, at which, by the purchase of a
ticket, the supposed inconvenience could have been
provided against.    We are not considering a case
where a passenger has not had an opportunity to pro-
vide himself with a ticket.    The Oregon and Pennsyl-
vania cases, relied on by appellant, were such cases.
On many of the great trunk lines of the country the
collection of this excess is omitted under the express
provisions of the regulation, when passengers are taken
on at "non-ticket" stations, or when children or in-
firm persons are traveling alone and do not have
money sufficient to pay the excess.    There are no
circumstances surrounding the appellant which ren-
der the application of this rule to him unreasonable
or harsh.    Ordinarily, the prompt compliance with
the reasonable requests of these carriers conduces
largely to the safety of the traveler, and we hesitate
to interfere with rules which, by facilitating the bus-
iness of the company, inures in the end to the benefit
of the public.

The burden of proof was properly placed on the
company.    It admitted the expulsion, and pleaded
facts authorizing it, which were denied by the plaint-
iff.    The rulings of the court as to the pleadings
and on the competency of the proof were substan-
tially correct.    On the whole case, upon the law and
facts as they appear in this record, the finding of
the jury could not have been otherwise.

Judgment affirmed.