## LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. WRIGHT.

[No. 2,209. Filed June 11, 1897. Rehearing denied Sept. 14, 1897.]

RAILROADS.—*Ticket is Contract Between Purchaser and Railroad.*—A railroad ticket is a contract between the purchaser and the railroad company. *p. 129.*

SAME.—*Ticket.—Condition.*—A condition in a railroad ticket that it shall not be good for a return passage unless signed by the original purchaser on the day of departure returning, and in the presence of the authorized agent of the company, which is made in consideration of a reduction of fare, is not unreasonable. *p. 130*

SAME.—*Damages.—Ejection of Passenger.*—A railroad company is not liable in damages for refusing to accept a ticket for a return passage, and in ejecting the passenger, where the ticket tendered by

such passenger was an excursion ticket containing the conditions that, in order to entitle the holder to a return passage, it must be signed by the original purchaser, on the day of the departure returning, and in the presence of the authorized agent of the company, where such ticket was not signed or attested, although it was shown that the passenger applied at the office of the company at the terminal point, a small station, at 10:15 p. m., after the office was closed for the purpose of having the ticket signed and attested. *pp. 126–136.*

From the Tippecanoe Superior Court.    *Reversed.*

*John F. McHugh* and *E. C. Field,* for appellant.

*C. M. Bright,* for appellee.

ROBINSON, J.—Appellee brought this action to recover damages for being wrongfully ejected from one of appellant's trains.    Issues were formed, and the case was submitted to the court upon an agreed state of facts.    The court found for appellee in the sum of one hundred dollars, and rendered judgment for that amount.

The facts, as agreed upon, are substantially as follows:    On the 4th day of May, 1895, the appellee purchased a round trip ticket from the appellant, from Lafayette, Indiana, to Paisley, Indiana; that the ticket provided that it was good for one first-class passage to Paisley, Indiana, and return, when stamped as indicated on the back thereof, and that as the ticket was sold at a reduced rate, it was not good for stopover, and was good for going passage only on the date of sale, and returning to the date canceled in the margin of the ticket; and that the ticket was not valid for return passage unless signed by the original purshaser on the day of departure returning, in the presence of the authorized agent of the Louisville, New Albany & Chicago Railway at Paisley, Indiana, and witnessed by him.    On the face of the ticket there was also a notice to the purchaser thereof to the effect that the

Louisville, New Albany and Chicago Railway Company *v.* Wright.

return part of the ticket must be stamped and the purchaser's signature witnessed by the agent of the Louisville, New Albany & Chicago Railway, at Paisley, Indiana, before it would be honored for passage; that the appellee was carried on the appellant's train from LaFayette, Indiana, to Paisley, Indiana, on said date, and that said ticket was good returning, until the 9th day of May, 1895; that the appellee went through from Paisley to the city of Chicago on the 4th day of May, 1895, and on the 6th day of May, 1895, he came from the city of Chicago on appellant's train to Paisley, reaching there at about the hour of 10:15 p. m.; that he got off of said train and went to appellant's ticket office at said Paisley for the purpose of signing said ticket in the presence of appellant's agent, and having his signature witnessed by the agent as provided on said ticket, but that the office of the appellant was closed, and the appellee was unable to find appellant's agent, though he made search for him; that appellee went to the office a sufficient length of time before the train on which he came left Paisley to sign his name, and have the ticket duly attested according to its provisions, but was unable to do so because the office was closed, and there was no agent of the appellant there; that after going to the appellant's office appellee got on appellant's train at Paisley, and presented said ticket to the conductor of the train, who declined to receive the same because the same was not signed by the appellee as required by its provisions, and the signature was not witnessed as required by the conditions of said ticket; and the appellant refused to accept the ticket for passage and ejected the appellee from the train at the town of Lowell; that on the 4th day of May, and on the 6th day of May, at the time said ticket was purchased and sought to be used, the station of Paisley was a regular

stopping station for said train leaving Chicago at 8:30 p. m., upon which the appellee came, and arrived at said Paisley at about the hour of 10:15 p. m., and that it stopped at Paisley both for the purpose of receiving and discharging passengers; that the ticket was a special ticket and issued at a reduced rate below the regular rate in consideration of the terms of the contract therein prescribed; that the appellee did not obtain the stamp of the agent of the appellant at Paisley before returning, nor did he have the agent witness his signature on the back of the ticket before he entered the train of appellant on his return passage, nor did he apply to the agent at Paisley nor to the office of the appellant at Paisley until the office was closed for the day, nor until after the arrival of the train at Paisley on which he desired to take passage; that he got off the train when it reached Paisley, expecting to obtain the agent's stamp at that hour, and have his signature duly attested by the agent; that on said 6th day of May, 1895, the appellant had and kept its office and station open at said Paisley, and had its agent there ready to do and perform all duties from the hour of 7 a. m. of said day until the hour of 7 p. m. of said day; that Paisley is a station with a population of less than fifty people, and that the appellant did not have, at or before said time, a night agent or a night office at said point, nor was said station a night station at said time, and appellant did not have nor maintain either a night office or a night agent there at or before said time, but had an agent on said day from 7 a. m. to 7 p. m., ready to attest signatures and do all other business of the appellant at said station; that the appellee knew of the conditions on the ticket, that it would not be valid for return passage unless signed by the original purchaser on the day of departure for returning, in the

presence of the authorized agent of the appellant at Paisley and witnessed by said agent before he got on said train returning; that the appellee got off the train at Paisley for the purpose of having the ticket signed and stamped; that the same was not signed and stamped because the agent of the appellant was not there, and because said appellant had no night agent there, and that, thereafter, the appellee tendered the ticket unsigned and unstamped to the conductor of the appellant, who refused to receive the same and demanded fare of appellee from Paisley to LaFayette, which fare the appellee declined to pay; and that the conductor of such train assigned as his reasons for not receiving the ticket that it was not stamped and the signature of the appellee was not witnessed by the agent of the appellant at Paisley as required by its conditions, and that the appellee told the conductor that he had gotten off at Paisley for the purpose of signing said ticket, and having the same witnessed, but that the office of the appellant was closed and the agent was not there.

In many early decisions it was held that a railroad ticket was no more than evidence that the holder had paid the passage money entitling him to be carried from one point to another, and that in effect it was no more than a receipt for the passage money so paid. But by the later adjudications such ticket is held to be a contract between the purchaser and the railroad company. *Pullman Palace Car Co.* v. *Taylor,* 65 Ind. 153, 32 Am. Rep. 57; *Terre Haute, etc., R. R. Co.* v. *Fitzgerald,* 47 Ind. 79.

Thus, in *Callaway* v. *Mellett,* 15 Ind. App. 366, this court said: "We must, therefore, give to a ticket, a more extensive signification than a mere receipt or voucher. * * * When it is so drafted as to impose an affirm-

ative obligation upon either party, it amounts to a contract, and must be construed, and the rights and obligations of the parties thereunder determined, by the law of contracts in general."

Although the appellee had not signed the ticket when he first purchased it, yet he accepted it, and had used a part of the ticket, and from the agreed facts it appears that he knew that the return part of it must be signed and witnessed before using it.

The difficult question to be determined in this case is whether the appellee is excused from the performance of the conditions precedent by the failure of the appellant to have its office at Paisley open when appellee went to sign the return ticket, and have it witnessed and stamped as required.

The railroad company, in consideration of the reduced fare, had a right to attach reasonable conditions which the purchaser should comply with before using the ticket. Ordinarily, appellee would have purchased a ticket from LaFayette to Paisley, and then bought a ticket at Paisley for the return trip. There was nothing unreasonable requiring that appellee should present the return coupon to the appellant's agent and sign the ticket in the presence of the agent before presenting it to the company for passage. The contract of carriage, with the conditions, was a valid and binding agreement between the company and the purchaser of the ticket. He had not simply contracted with the company for passage from LaFayette to Paisley and return, but he had agreed to present the ticket to the appellant's agent at Paisley, and sign it in the presence of the company's agent. This was a condition precedent, and until it had been complied with or an excuse shown for noncompliance, the ticket gave him no right to a return passage. Such a condition is reasonable, and it is the duty of the purchaser to read

it, and comply with its terms. *Bowers* v. *Pittsburgh, etc., R. R. Co.*, 158 Pa. St. 302, 27 Atl. 893.

It has been held that the right of the holder to ride upon such a ticket does not depend upon his being the identical person who purchased it, but upon his complying with this condition precedent, and that a conductor has no power to determine his right to passage unless the condition has been performed.

Thus, in *Mosher* v. *St. Louis, etc., R. W. Co.*, 127 U. S. 390, 8 Sup. Ct. 1324, it is said: "The conductor of the defendant's train, upon the plaintiff's presenting a ticket bearing no stamp of the agent at Hot Springs, had no authority to waive any condition of the contract, to dispense with the want of such stamp, to inquire into the previous circumstances, or to permit him to travel on the train. It would be inconsistent alike with the express terms of the contract of the parties, and with the proper performance of the duties of the conductor, in examining the tickets of other passengers, and in conducting his train with due regard to speed and safety, that he should undertake to determine, from oral statements of the passenger or other evidence, facts alleged to have taken place before the beginning of the return trip, and as to which the contract on the face of the ticket made the stamp of the agent of the Hot Springs Railroad Company at Hot Springs the only and conclusive proof." See *Boylan* v. *Hot Springs R. R. Co.*, 132 U. S. 146, 10 Sup. Ct. 50.

In *Western Maryland R. R. Co.* v. *Stocksdale*, 83 Md. 245, 34 Atl. 880, a passenger was sold an excursion ticket by the company which, by its terms, was required to be stamped for return passage by the secretary of a camp meeting association. When the ticket was sold the camp meeting had closed and the secretary had gone away, but this fact was not known to the agent who sold the ticket. There was an agreement between

the association and the railroad company by which excursion tickets were to be sold at a reduced rate. After an unsuccessful effort to have the ticket stamped the passenger tendered the unstamped ticket for return passage, and on refusal of the conductor to accept it, refused to pay fare, and was ejected from the train. It was held he could not recover.

The ticket in the case at bar is not limited to any particular train, and on its face would be good on any train scheduled to stop at the points named. If appellee, when he purchased the ticket, had taken passage on a train not scheduled to stop at Paisley and had been ejected from the train before reaching that place, or had been carried beyond it, he would have had no right of action against the company. He would be held bound to know whether the train on which he had taken passage would stop at the station for which he purchased the ticket. *Chicago, etc., R. R. Co.* v. *Bills*, 104 Ind. 13; *Ohio, etc., R. W. Co.* v. *Swarthout*, 67 Ind. 567; *Ohio, etc., R. W. Co.* v. *Hatton*, 60 Ind. 12; *Ohio, etc., R. W. Co.* v. *Applewhite*, 52 Ind. 540; *Pittsburg, etc., R W. Co.* v. *Lightcap*, 7 Ind. App. 249.

In *Ohio, etc., R. W. Co.* v. *Applewhite, supra*, the court said: "It is the duty of a party going upon a railroad train to inform himself when, where, and how he can go or stop according to the regulations of the railroad company, and if he make a mistake, not induced by the company, and against which ordinary diligence and care would have protected him, he has no remedy for the consequences against the company."

In *Pittsburgh, etc., R. W. Co.* v. *Lightcap, supra*, it is said: "Doubtless, a railroad company not only has the right, but it is its duty to operate its trains in accordance with established rules and regulations, and upon these it is not bound to infringe in order to accommodate a single passenger.

"On the other hand, it is the duty of one about to become a passenger to use reasonable diligence in acquainting himself with the rules and regulations of the company respecting the time when, the place where, and the circumstances under which a train upon which he desires to travel may go or stop according to the company's rules and regulations; and if, by neglecting to do so, he makes a mistake, he can have no remedy, if he be carried past his destination or ejected before getting there."

Where a passenger could have purchased a round trip ticket at the station where he took the train, the fact that there was no ticket station at his point of destination, thus preventing him from buying a ticket home, does not excuse his refusal to pay the extra twenty-five cents. *Snellbaker* v. *Paducah, etc., R. R. Co.* 94 Ky. 597, 23 S. W. 509.

It has been held that a discrimination by a railroad company in its rates in favor of passengers who purchase tickets before entering the cars is a reasonable regulation, and that to justify such a discrimination, proper facilities should be afforded by the company for the procurement of a ticket before the passenger goes upon the train. *Lake Erie, etc., R. R. Co.* v. *Mays,* 4 Ind. App. 413.

If a company advertise to carry passengers purchasing tickets at a less rate than the regular fare, it is not bound to keep its ticket office at a particular station open after the time when a train of cars is advertised to leave that station, and if a person arrives after that time, and enters the car without a ticket, he may, in accordance with a regulation of the company, be expelled for refusing to pay full fare, although he was unable to procure a ticket in consequence of the ticket office being closed. *Swan* v. *Manchester, etc., R. R. Co.,* 132 Mass. 116; *State* v. *Hungerford,* 39 Minn. 6, 38 N.

W. 628; *St. Louis, etc., R. R. Co.* v. *South*, 43 Ill. 176; *Chicago, etc., R. W. Co.* v. *Brisbane*, 24 Ill. App. 463; *Everett* v. *Chicago, etc., R. R. Co.*, 69 Ia. 15, 28 N. W. 410.

A passenger paid the price of a ticket from Detroit to Quebec and return, but, by mistake of the agent, was given a ticket both parts of which were stamped for passage from Detroit to Quebec. He discovered the mistake when about to enter the train, and thereupon consulted a person temporarily in charge of the station office during the absence of. the agent. This person said he had no authority to correct the mistake, but thought the matter would be all right. The passenger went to Quebec, and spent several weeks, but on his way home was ejected from the train. It was held that he was bound to know that the conductor had a right to refuse the ticket, and therefore, in boarding the train, was guilty of negligence barring a recovery in tort, and rendering his damages merely nominal if his action is on contract. *Poulin* v. *Canadian Pac. R. W. Co.*, 52 Fed. 197, 3 C. C. A. 23, and cases cited.

It is held that the penalty prescribed by statute for failure to note upon a blackboard in a depot at a station where there is a telegraph office, the time at which a schedule train will arrive, is not recoverable for failure of a company to note the facts in that respect as to a train scheduled to arrive at such a station during the night, when the company does not keep its telegraph office open. *Terre Haute, etc., R. R. Co.* v. *State*, 13 Ind. App. 529.

And under a statute providing a penalty for failure to reasonably transmit a message, the telegraph company may regulate, reasonably, its office hours according to the requirements of the business at the various points where it holds itself out for public service, and the penalty is not incurred unless there is a failure to

receive and transmit the message during the usual office hours both at the point where the message is received, and that to which it is transmitted. *Western Union Tel. Co.* v. *Harding*, 103 Ind. 505.

While the two cases last cited arose under penal statutes, yet the reasoning in some respects is applicable to the case at bar.

In the operation of its road the appellant had the same right to require that certain of its offices should be open for the transaction of business only during certain hours, that it had to make rules and regulations for the running of its trains. If a passenger is bound to know whether a train on which he takes passage will stop at the station to which his ticket reads, by the same reasoning he would be bound to know whether a certain station at which he desires to transact business will be open at all hours. We think a regulation of the company that a station at a village of less than fifty inhabitants is open for the transaction of business from 7 a. m. to 7 p. m. each day is reasonable, and that the failure of the company to have an agent at that point at other hours did not excuse the appellee from performing the only condition required of him in consideration of the reduced fare. The facts show that the ticket was a special ticket and was secured at a reduced rate below the regular rate in consideration of the terms of the contract therein prescribed. It also appears that on the day the ticket was presented the appellant's office at Paisley was open from 7 a. m. to 7 p. m. and an agent was present to transact the business of the company. When appellee purchased the ticket he must be held to have known that it could be signed and stamped for return only during the hours at which the company kept an agent at its office at Paisley. Such a requirement might be an inconvenience, but it was not unreasona-

ble. The contract required that he sign the ticket, and have his signature witnessed, on the day of departure returning. For twelve hours on that day appellant had an agent at its office to do that and its other work. With this opportunity, we think the failure to have the ticket properly signed and witnessed must rest with appellee. Appellant gave him reasonable facilities to comply with the conditions imposed, and these conditions could have been complied with by the use of due diligence on the part of appellee.

It follows from what has been said that the demurrer to the second paragraph of answer should have been overruled.

Judgment reversed.