CASE 118—ACTION BY SUSIE C. HUDSON AGAINST THE BALTIMORE &
OHIO SOUTHWESTERN RY. CO. FOR DAMAGES FOR REFUSAL OF THE
AGENT TO VALIDATE AN EXCURSION TICKET.—APRIL 20.

# Baltimore & Ohio S. W. Ry. Co. v. Hudson.

APPEAL FROM JEFFERSON CIRCUIT COURT (C. P., 1ST. DIV.)

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.    REVERSED.

CARRIERS—PASSENGERS—RETURN EXCURSION TICKETS—USE BY ORIGIN-
AL PURCHASER—CONDITIONS—IDENTIFICATION OF PURCHASER—VA-
LIDITY—BURDEN OF PROOF—FAILURE TO VALIDATE—CARE RE-
QUIRED.

HELD: 1. A condition on a return excursion ticket sold by a railroad
company at a reduced fare requiring the holder to identify her-
self as the original purchaser by writing her signature on the
back thereof, and, if this is not satisfactory to the validating
agent, to produce other proofs of her identity, is reasonable and
valid.

2. Where a return excursion ticket contained a contract by which
the purchaser agreed, on the day of her departure returning,
to identify herself as the original purchaser by writing her sig-
nature on the back of the ticket, "and by other means if neces-
sary," in the presence of the ticket agent of the carrier, and
that the ticket should not be good until officially executed by
such agent after such identification, the burden was on the
holder of the ticket to produce additional evidence of identifica-
tion, on the agent not being satisfied of her identity, by reason
of a dissimilarity in the signatures.

3. Such agent was not required to accept the holder's verbal assur-
ance of her identity, nor to institute other inquiries with a view
of satisfying himself on such subject.

4. In an action against a carrier for refusal to validate the return
portion of a passenger's excursion ticket, good only in the hands
of the original purchaser, for lack of sufficient evidence of iden-
tity, an instruction making the carrier's liability turn solely
on the question whether the jury believed the ticket agent wrong-
fully refused to validate the ticket, and failing to submit the
question whether proof of the holder's identity as the original

Baltimore & Ohio S. W. Ry. Co. v. Hudson.

purchaser offered to the ticket agent was such as should have satisfied the mind of a reasonably conscientious and prudent man, was erroneous.

GIBSON, MARSHALL & GIBSON, ATTORNEYS FOR PLAINTIFF.

POINTS.

1. A condition in an excursion ticket that the original purchaser must identify himself as such before starting on the return ticket by signing his name in the presence of the ticket agent, and otherwise if necessary, is reasonable.

Boylan v. R. R. Co., 122 U. S., 290; Mosher v. R. R. Co., 127 U. S., 396; Edwards v. R. R. Co., 81 Mich., 364; Wenz v. R. R. Co. (Ga.), 33 S. E., 970; Dangerfield v. R. R. Co. (Kan.), 61 Pac., 405; Abram v. R. R. Co. (Tex.), 18 S. W., 321; R. R. Co. v. Barlow, 30 S. E., 732; Bethea v. R. R. Co., 26 S. C., 91; Bowers v. Penna. Co. (Pa.), 27 Atlanta Rep., 893.

2. If the evidence of identity is not such as to satisfy a reasonable man, the ticket agent is justified in refusing to validate the ticket. Sinnott v. R. R. Co. (Tenn.), 56 S. W., 836; Central of Ga. Ry. Co. v. Cannon, 14 Am. and Eng. R. R. Cases, N. S., 405; Morse v. Railway Co., 102 Ga., 302; Bethea v. R. R. Co., 26 S. C., 91.

3. If the holder of the ticket, in attempting to identify himself as the original purchaser by signing his name in the presence of the agent, wrote a signature so palpably different from that of the original purchaser as to convince the agent and all experts who compared the two signatures, that they were not written by the same person, the agent was justified in refusing to validate the ticket.

4. It was error to permit the jury to determine for themselves whether the agent "wrongfully refused" to validate the ticket without any instruction to advise them what the reciprocal rights and duties of the parties were. The instruction left the agent without the right to exercise any judgment or discretion in the matter, but compelled him to act at his peril, even though he was satisfied the person presenting the ticket was not the original purchaser.

5. The appellee, having sufficient money to buy a ticket (which she afterwards did), and being assured that the price of it would be refunded if she established her identity as the original purchaser of the excursion ticket, should have purchased a ticket and gone on her journey, instead of consulting a scalper and

then exposing herself for several hours on an inclement night in search of a lawyer to institute a damage suit.

6. It was unreasonable in any case to ask a ticket agent at a union station in a large city to leave his office and go to the baggage room to afford further opportunity of identification, and especially so when he was already convinced the person offering the ticket was not the original purchaser.

7. It was error not to instruct the jury that appellee could not recover for sickness caused by exposure while seeking a lawyer to institute a suit to recover damages because of the refusal of the ticket.

MYERS & HOWARD, W. M. SMITH AND JOHN A. DODD, FOR APPELLEE.

Defendant below does not question the genuineness of the plaintiff or the bona fides of the transaction. It has, of course, turned the searchlight of investigation upon the plaintiff and her conduct through its detective or so-called "specials," and of course it could find nothing to justify its action except the mere dissimilarity in signature. Its entire defense is builded upon this foundation. It does not plead that plaintiff did not purchase the ticket at St. Louis, nor does it plead that the original purchaser did not present it and offer it for validation. It knew that proof overwhelming would be produced to establish these facts. Its defense was not fair. It was almost sham. Denuded of all extrinsic averments and conclusions, the defense presented by the pleadings is that the signatures were palpably dissimilar and that it based its action entirely upon this fact, refusing all other evidence. It well knew the ticket was genuine, and that Miss Hudson had purchased it and was the proper owner of it, nevertheless it so constructed its pleadings as to admit it to put in evidence all sorts of innuendoes of forgery and fraudulent ticket without actually standing upon that defense. An inspection of the record will, it is submitted, satisfy the court that appellant has had more than a fair trial below and has had the benefit of an instruction far more favorable to it than the proof entitled it to. No error to its prejudice was committed.

An affirmance is respectfully asked.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

The appellee, Susie C. Hudson, instituted this suit against the appellant, the Baltimore & Ohio Southwestern Rail-

way Company, to recover damages for the refusal of its agent in Cincinnati to validate an excursion ticket alleged to have been purchased by her from St. Louis to Cincinnati and return, and without which the ticket could not have been used by her. She alleges, in substance, that on the 22d of December, 1900, she purchased of the defendant, at St. Louis, Mo., a round-trip ticket over its road to Cincinnati, Ohio, good until the 2d of January, 1901; that on the 26th of December, 1900, she presented her ticket to the agent of the defendant at Cincinnati and signed it as required by its terms for return passage to St. Louis, and that defendant's agent wrongfully refused to validate the ticket or to admit the plaintiff to its train, and publicly charged that she was attempting to use the ticket of which she was not the original purchaser; that she was employed as a teacher in a stenographic school in the city of St. Louis, and had contracted to return to her place of duty on the morning of the 27th of December, 1900; that, by the refusal of the defendant's agent to stamp her ticket, she missed the regular train, by which she could have complied with her obligation, and was compelled to buy another ticket and go on the next train, which did not leave Cincinnati until 2 o'clock a. m. on the morning of December 27th, and which did not arrive in St. Louis until the afternoon of the 27th; and that she consequently lost her position as a teacher, and was made sick and nervous by the delay and treatment which she received. Appellant's original answer is a traverse, and the amended answer alleges that a round-trip ticket was sold on December 22d to some one who represented herself to be Susie Hudson by signing her name on the face of the ticket, which was not, by its terms, transferable, and contained among

other stipulations the following: "I further agree that on the day of my departure returning, 1 will identify myself as the original purchaser of this ticket by writing my signature on the back of this contract, and by other means if necessary, in the presence of the ticket agent of the Baltimore & Ohio Southwestern Ry. Co., at Cincinnati, and when so officially executed and signed by said agent this ticket shall then be good for one continuous passage beginning on the day of such execution." That, when this ticket was presented to appellant's agent in Cincinnati by a person representing herself to be the original purchaser he required her to identify herself by signing her name on the back of the ticket as required by the contract, which she did, signing her name "Susie C. Hudson;" that the signature of the original purchaser on the face of the ticket was so dissimilar from that appearing on the back that the agent refused to validate the ticket on the ground that they were not the same signatures, and referred the holder to the depot passenger agent of the company, at that time in the depot, who was also not satisfied with the identification, and advised the plaintiff to pay her fare to St. Louis, with the assurance that it would be refunded to her if she should sufficiently identify herself as the original purchaser. The amended answer was controverted of record, and the trial resulted in a verdict and judgment for $1,000, which the railroad company seeks upon this appeal to reverse.

Appellee testified that she was employed as a teacher in a stenographic school in St. Louis at $45 per month; that she purchased the ticket in controversy after 12 o'clock at night, and left St. Louis on the train leaving for Cincinnati at 2 o'clock a. m. on the morning of December 22d; that on the evening of December 26th she presented

this ticket at 7:30 o'clock to defendant's agent at its station in Cincinnati, Ohio, and in his presence signed her name on the back of the ticket, and requested him to validate it for the train leaving Cincinnati at 8 o'clock, which he refused to do, remarking in the presence of several persons, in an offensive manner, that she was not the Susie Hudson who signed the ticket on its face, and that she had bought it of a scalper; that she thereupon assured him that she was the original purchaser, and was compelled to be in St. Louis the next morning at 8 o'clock, by contract with her employer, or lose her position, and that she could not arrive there unless he validated her ticket so that she could go on the next train, and informed him that she had a valise in the baggage room which contained letters and papers by which she could identify herself, if he would examine them, which he declined to do, and referred her to another officer of the company, who was at that time on the floor of the waiting room, and to whom she preferred the same request, but who, after examining the signatures on the face and back of the ticket, refused to interfere, and who advised her to purchase another ticket, and make claim to have money refunded to her in St. Louis. Plaintiff testifies that after the second refusal she left the depot, went over to Covington to see her attorney in this case, and found his partner, to whom she explained the situation, and left the ticket with him, with instructions to institute this suit; that she then returned to the depot in Cincinnati, and bought a ticket, and left for St. Louis on the train leaving Cincinnati at 2 o'clock a. m., six hours later; that, as a result of this delay, she lost her position in the stenographic school in St. Louis, and was made sick by the delay and exposure in her trip to Covington. She also introduced as witnesses two bystanders, who testified that

the ticket agent in Cincinnati was impolite and disrespectful at the time he refused to validate her ticket in Cincinnati. The agent of the railway company in St. Louis, who sold the ticket in controversy, testified that it was sold and stamped in St. Louis after 6:30 a. m. on the morning of December 22d, some hours after the departure of the train on which the plaintiff testified that she left St. Louis; that he knew this to be true, because he did not go on duty until 6:30 on the morning of December 22d; and that he recognized the signature of Henry Lython as his handwriting. The agent in Cincinnati testified that he refused to validate the ticket because the signature on the back of the ticket did not correspond with the signature on the front; that it contained the letter "C.," and was wholly dissimilar in appearance; that he asked appellee if she always wrote her name with "C."; that she replied that she did; that he then asked her to sign her name over again on a small envelope which he handed her; that she did so, and her signature was exactly like the one on the back of the ticket; that he then asked her if she had any means of identification about her person; that she replied that she had none with her, but had some baggage; that he referred her to the depot passenger agent, which was the last that he saw of her. Both witnesses testify that there is a striking difference in the appearance of the two signatures. The railroad company also introduced a number of experts who testified to a very radical difference between the signatures on the face and on the back of the ticket. The following is a fac simile of the signatures:

No testimony was introduced by appellee to rebut the testimony of these experts.

Upon the trial the court instructed the jury as follows: "(a) The court instructs the jury that if they shall believe from the evidence that on the 22d of December, 1900, the plaintiff bought from the defendant, at St. Louis a round-trip ticket from St. Louis, to Cincinnati, and that, within the time limited by the terms of the contract (that is, upon the 26th of December, 1900), she presented the ticket to the agent of the defendant at Cincinnati, and signed her name upon it in his presence, as required by the terms of said ticket, and that said agent wrongfully refused to validate the ticket, and refused to admit her to the train for her said return trip upon said ticket to St. Louis, and charged her with presenting a fraudulent ticket, then the law is for the plaintiff, and they should so find. (b) But unless the plaintiff bought the said round-trip ticket at St. Louis, and signed her name upon it at Cincinnati, as required by the contract therein, and requested the defendant to validate it, and the agent wrongfully refused to do so, then the law is for the defendant, and the jury should so find."

A condition, upon a return excursion ticket sold by the railroad company at a reduced rate, requiring the holder to identify herself as the original purchaser of the ticket by writing her signature on the back thereof, and, if this is not satisfactory to the validating agent of the company, to produce other proofs of the fact of identity, is neither unreasonable nor unusual; and the validity of such conditions has, we believe, been universally upheld, as based upon a sufficient consideration. See Hutchinson on Carriers, section 580b; Ray on Negligence of Imposed Duties,

Carriers of Passengers, sections 511, 512.    If the vali-
dating ticket agent was not satisfied from a comparison
of the signatures of the claimant of the ticket as to her
identity, the burden of producing such proof, if required
by him, was upon her, and it was so stipulated in the con-
tract.    Nor    was he required to have accepted her mere
verbal assurance of her identity, or to institute other in-
quiries with a view of satisfying his mind on this point.
See Railway Co. v. Barlow (Ga.) 30 S. E. 732; Head v.
Georgia Pacific Railway Co., 79 Ga. 358, 7 S. E. 217, 11
Am. St. Rep. 434.   If it be conceded that the dissimilarity
in   the   signatures   on   the   face   and   back   of   the
ticket was sufficient to have justified a conscientious
and reasonably prudent agent in requiring additional proof
of her identity, then the question arises whether the proof
produced by appellee, or offered to be produced by her,
was sufficient for this purpose, and this is a question of
fact for the decision of the jury.    The instructions given
by the trial court make appellant's liability   turn    upon
whether the jury believed the ticket agent wrongfully re-
fused to validate the ticket.    This is not a full and clear
statement of the law of the case.    Appellant was entitled
to have had the jury decide, not whether they believed the
agent acted wrongfully in refusing to validate the ticket, but
whether the proof of her identity as purchaser of the ticket
offered to the ticket agent was such as would have satis-
fied the mind of a reasonable, conscientious, and prudent
man, who had been selected by the parties to pass upon
the question.    As a general proposition, it is more import-
ant for the railroad company that the identity of the holder
and purchaser of the ticket should be satisfactorily estab-
lished than to the ticket holder, for the reason that a genu-

ine purchaser can always require the company to refund her money if the validating agent wrongfully refused to stamp her ticket, whilst, on the other hand, a mistake against the company in this matter would leave it practically without remedy.

For reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.