## Illinois Central Railroad Company v. Williams.

(Decided February 21, 1912.)

### Appeal from Ohio Circuit Court.

Railroads—Obligation of Agents to Passengers—Failure to Validate Return Tickets—Liability.—Appellee purchased from the I. C. R. R. Co. at Central City, Ky., at a reduced rate, a round trip excursion ticket to Knoxville, Tenn., via the L. & N. R. R. line. Returning he was denied passage from Louisville to his home in Central City, and brought this suit to recover for his expense, a days loss of time and for his mortification and humiliation and recovered a verdict for $250.00. From this verdict the railroad company appeals. Held, There is an affirmative obligation upon a railroad passenger laid upon him by the contract into which

he enters to take his ticket to the agent at the turning point, in order that it may be validated for the return journey, but when once he has presented it to the agent and given him to understand that he is entering upon his return journey the duty devolves upon the agent to see that the validating is done properly. At this point the passenger has discharged his full duty and is not to suffer because of the carelessness, inattention or ignorance of the agent placed in charge of the other side of the contract.

H. P. TAYLOR, C. L. SIVLEY and TRABUE, DOOLAN & COX for appellant.

BARNETT & SMITH for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

In September, 1910, appellee, J. C. Williams, at Central City, Kentucky, purchased from appellant, Illinois Central Railroad Company, a round trip ticket to Knoxville, Tennessee. It was routed via the Illinois Central lines to Louisville; and from that point to Knoxville via the Louisville & Nashville Railroad's line. It was a reduced rate excursion ticket. Returning, Williams traveled on the ticket without objection to Louisville; but was denied passage from that point on home by the Illinois Central Company. He was delayed a few hours in Louisville, at a few dollars expense, and brought this action to recover for his expense, a day's loss of time, and his mortification and humiliation. The jury returned a verdict of $250 in his favor, and the Illinois Central Company appeals. Section 4 of the ticket contract provides as follows:

"It is not good for RETURN passage unless the Original Purchaser identifies himself or herself to the authorized Validating Agent of Line at

## DESTINATION

Over which Ticket reads therefrom, and when this Ticket is officially executed by such Agent by being signed and dated, in ink, and stamped, it shall then be good only for CONTINUOUS RETURN PASSAGE of the Original Purchaser to starting point, leaving destination only on date so stamped on back (except it is subject to the stopover regulations of the lines over which it reads), and further provided such extreme RETURN limit shall not extend beyond date punched under head of 'FINAL LIMIT,' after which Ticket is void."

Section 5 of the ticket contract provides as follows:

"I, the Original Purchaser, agree to sign my name and otherwise satisfactorily identify myself as such whenever called upon to do so by any Conductor or Agent of any of the lines over which this Ticket reads."

The original ticket is in the record. On its back appears this printed matter:

"In compliance with my contract with the Illinois Central Railroad Co. and lines over which this ticket reads, I hereby subscribe my name as the original purchaser of this ticket.

"Signature* ————————————————

"Witness ——————————————————
                       Validating Agent.

"Dated ————————————————190—."

At the left of this endorsement appeared a space surrounded by a scroll, above which was printed "Validating Agent at Destination of Ticket will stamp in space below." Within the scroll, printed by rubber stamp, appears "L. & N. R. R. Sep. 23, '10, Depot-B, Knoxville, Tenn." Neither the name of Williams, nor the name of the agent, however, was written upon the back of the ticket. For this reason, because of the provisions above quoted as sections 4 and 5 of the ticket, Williams was refused passage. We must consider, therefore, the relative rights of the parties under the contract.

In the first place, some misapprehension seems present as to what was necessary in the process of validation at Knoxville. There was nothing in the contract providing that Williams should sign there; per contra, he had to sign his name only when "called upon by any conductor or agent of any of the lines over which this ticket reads." If the agent there had called upon him to sign, it was his duty to do so; but he was not asked to sign. Nor does the fact that a blank space was left for his signature even imply that he should sign at Knoxville. The place was provided for his signature in case the signature should be asked. Doubtless the custom was to have the passenger sign at the time of validation, and doubtless agents were instructed to demand the signature. But the contract, not the custom, must govern. The agent, however, was required to sign, but failed to do so. This is the plain intent of section 4 of the contract. Practically the same ticket provision was so construed in Boylan v. Hot Springs Railroad Company, post.

In investigating generally the right of holders of like or similar ticket contracts, we present the following authorities, quotations and comment:

In Hutchinson on Carriers, section 1054, it is said:

"Where in consideration of a reduced rate, a 'round-trip' ticket is sold by which the passenger is to be conveyed to the point of destination and back, and the terms of the contract are that the ticket shall be good for the return trip only upon condition that the passenger will present himself as the original purchaser and procure the ticket to be there stamped, or shall comply with other similar requirements, the validity of the ticket for the return depends upon his compliance with the contract, and in case he fails to comply he may be refused carriage and ejected from the car."

In Bowers v. Pittsburg, Fort Wayne & Chicago Railroad Company, 158 Pa. St., 302, Bowers had presented his ticket at the Pullman office and purchased his sleeping car berth for the return trip. The agent was only the Pullman agent and had nothing to do with the validation of the ticket. The passenger got upon the train and rode some distance; when the conductor came around, observed that his ticket was not validated, and ejected him. Said the court in speaking of the paragraph of the contract which demanded validation:

"The condition * * * is not unreasonable; and it was clearly plaintiff's duty to have informed himself of its existence. Having failed to comply with the terms of the condition he had no right to use the ticket for the return trip."

In Moses v. East Tennessee, Virginia & Georgia Railroad Company, 73 Ga., 356, the ticket was a round-trip excursion rate ticket to Jacksonville, Florida. One of its provisions was that it should not be good for return passage, unless "the holder should identify himself to the agent before starting back" and that "when officially signed and dated in ink, and duly witnessed and stamped by said agent" the ticket should be good for the return journey. The purchaser made no effort at all to have his ticket validated. He was ejected, and the court held him without remedy. The court said that an instruction in substance that the purchaser must comply with his part of the contract, and that his failure to do so gave the railroad the right to put him off, was correct.

In this case it is notable that the ticket read over two lines and the court held that the fact that the first line

accepted the ticket and carried the passenger upon it would not have the effect of waiving the right of the second line to act otherwise.

In Rawitz v. Louisville & Nashville Railroad Company, 40 L. Ann., 47, it was held that a written provision of a contract, like the one under discussion here, is not subject to modification by parol testimony, and that such a provision in a contract, though entailing considerable annoyance upon the purchaser, is not liable to the objection that it is unfair and unreasonable, in view of the reduced rate obtained by the passenger.

In Louisville, New Albany & Chicago Railway Company v. Wright, 18 Ind. App., 125, s. c., 47 N. E., 491, a passenger, under a ticket similar to the one exhibited in the case at bar in an effort to have his ticket validated, presented himself at the station after it had closed for the night. The court held that in consideration of the reduced fare the railway company had the right to attach the condition as to its validation and that this condition was a condition precedent, a compliance with which or excuse for non-compliance with which must be shown, before the ticket gave the right to a return passage; and that the appearance at the ticket office in the village in the night time was not a sufficient effort to comply with this precedent condition, because the railway company, under a reasonable operation of its business, had the right to keep the small station closed at night.

In Watson v. Louisville & Nashville Railroad Company, 104 Tenn., 194, s. c., 49 L. R. A., 454, it was held that a condition that the ticket must be stamped by the agent at the turning point of the round trip before it would be good for return passage, was a reasonable regulation by the carrier. It was further held that the sale at the reduced rate was sufficient to put the purchaser upon inquiry and to affect him with notice of unusual terms and conditions attached to the ticket; and the fact that he could not read or write and was not specially notified of this requirement did not relieve him from the necessity of complying with the condition named.

In Edwards v. Lake Shore & Michigan Southern Railway Company, 81 Mich., 364, s. c., 21 Am. St. Rep., 527, it was held that a condition in a round-trip excursion ticket, sold by the railroad at less than a regular rate, that same should be good for return passage only after signature by the purchaser and stamping and dating by the agent, was reasonable and valid; and that the pas-

senger could not recover unless he had complied with the condition. His right to ride was not dependent upon whether he was the identical person who had purchased the ticket and paid for it, but was dependent upon whether he had carried out his contract giving him the right to ride.

In Boylan v. Hot Springs R. R. Co., 132 U. S., 146, it was held that where the contract of passage was an express one, signed by the passenger, he was bound by its conditions, whether he read them or not, and that the question as to whether he knew what obligations were imposed upon him by it, was rightly refused as immaterial; that he had no right to return passage under his ticket, unless it bore the signature and stamp of the company's agent at the end of the route, as was an express provision of the contract. In this case it is notable that the provision as to the means of validation is practically the same as in the case at bar. We have heretofore set out the provision in the case at bar, and now for the purpose of comparison quote that considered in the Boylan case as follows:

"That it is not good for return passage, unless the holder identifies himself as the original purchaser, to the satisfaction of the authorized agent of the Hot Springs Railroad, at Hot Springs, Ark., within fifty-five (55) days from date of sale, and when officially signed and dated in ink, and duly stamped by said agent, this ticket shall then become good only five (5) days from such date."

Its similarity is apparent in that there was no provision that the passenger should sign, save the general one that he should sign whenever he was asked to do so. The only signature which of necessity must have been upon the ticket, under the terms of the contract, was the signature of the agent. In discussing the case before it the Supreme Court treated of it as invalid unless it bore the signature and stamp of the agent; and commented upon the passenger's failure to have his ticket stamped. The court was obviously proceeding upon the theory that there was no obligation upon the passenger to offer to sign the ticket or ever to sign it until called upon to do so by some representative of the railroad.

In Mosher v. St. Louis, Iron Mountain & Southern Railway Company, 127 U. S., 390, the provision was that the purchaser must identify himself as the original purchaser to the authorized agent of the railroad at the turn-

ing point named in the round-trip ticket, and that the ticket should be good "when officially signed and dated in ink, and duly stamped by said agent." It further contained a provision that the purchaser should sign his name and otherwise identify himself whenever called upon so to do by any representative of the road. The court said that the clear meaning of the condition was that the ticket should not be good unless "the holder not only identifies himself as the original purchaser, to the satisfaction of the agent named, but that agent signs, dates and stamps the ticket." The court added: "The sixth condition by which the ticket is to be void if the plaintiff does not sign his name and otherwise identify himself whenever called upon so to do by any conductor or agent of either of the lines over which he may pass, is evidently intended as an additional precaution against the transfer of the ticket, either in going or returning, and not as an alternative or substitute for the previous condition as to the validity of the ticket for a return trip." It likewise was clearly of the opinion that the passenger's signature at the time of the validation for the return trip was not a requisite to the process of validation, unless demanded by the agent.

In Baltimore & Ohio Southwestern v. Hudson, 92 S. W., 947, the opinion by Judge Paynter is not decisive of any question especially before us here; save that the facts are analogous in one respect. The passenger was not ejected from the train in that case, as in this. In that case, as in this, the passenger was denied admittance to the train—in the case at bar by the conductor and gatekeeper, and in that case by the refusal of the ticket agent to validate the ticket upon request.

The same case was before this court on a prior appeal in 80 S. W., 454, where the court said:

"A condition, upon a return excursion ticket sold by the railroad company at a reduced rate, requiring the holder to identify herself as the original purchaser of the ticket by writing her signature on the back thereof, and, if this is not satisfactory to the validating agent of the company, to produce other proofs of the fact of identity, is neither unreasonable nor unusual; and the validity of such conditions has, we believe, been universally upheld, as based upon a sufficient consideration."

By practically all the authorities examined it is settled that there is an affirmative obligation upon the passenger, laid upon him by the contract into which he

enters, to take his ticket to the agent at the turning point, in order that it may be validated for the return journey. But when once he has presented it to the agent, and given him to understand that he is entering upon his return journey, the duty devolves upon the agent to see that the validating is done properly. At this point the passenger has discharged his full duty; and is not to suffer because of the carelessness, inattention, or ignorance of the agent placed in charge of the other side of the contract duty by the opposite party to the contract. Williams went to the ticket office at Knoxville and asked to purchase Pullman tickets. The agent then called for his transportation contract, took it, and affixed the rubber stamp of the Louisville & Nashville Railroad Co., within the scroll prepared for it on the back of the ticket; but the agent did not sign his own name, as the contract demanded he should do, nor did he call on Williams to sign, as the contract gave him the right to do. Under this state of fact the passenger had the right to assume that the agent had done his duty and that when he sold him the Pullman ticket and returned his transportation ticket to him, after having called for it, it was all that it should be to enable him to ride upon it. A mistake of the agent need not be sought out and discovered by the passenger. In Southern Railway in Ky. v. Hawkins, 121 Ky., 415, the ticket agent placed the wrong date upon the ticket, thereby letting it appear that its expiration date was earlier than it should have been. The passenger was ejected. This court held that he could recover for the ejection, because of the negligence of the agent in incorrectly stamping the ticket. Again, in Louisville & Nashville Railroad Co. v. Fish, 127 S. W., 519, the passenger had purchased a round-trip ticket. Upon the going journey the conductor, by mistake, took up the return portion of the ticket. When the passenger started upon his return journey he presented the going portion of his ticket. He was ejected. This court said: "We do not think appellee was negligent in failing to observe the mistake of the officer in returning to him the wrong portion of the ticket. He had a right to rely upon the accuracy and diligence of the officer, and to assume that the right ticket had been returned to him. He did not observe the mistake and was guilty of no contributory negligence by his failure to observe it." So in the case at bar, when the ticket was returned to Williams by the agent at Knoxville, he was guilty of no negligence in assuming that the agent had done his duty.

Nor do we think that the law demanded of Williams, under the facts presented here, that he should, in specific terms, have asked the agent to validate the ticket. It was sufficient that the ticket once came into the agent's hands with the information that the passenger was starting upon his return journey. In the case of Northern Pacific Railroad Co. v. Pauson, from the U. S. Circuit Court of Appeals, 9th Circuit, 70 Fed. Rept., 585, the facts were very like those presented here. The passenger sent a messenger to the ticket office to reserve a sleeper. He went to the office at ten o'clock in the evening and asked for his sleeper. The agent inquired his name and asked for his ticket, which was handed over to him. The agent asked the passenger to sign the ticket, which he did, but the agent failed to affix the stamp in a place provided for that purpose. The passenger failed to observe the absence of the stamp, and was ejected from the train. The court held that he had done all that he was required to do, and that he might recover. In that case the signature was affixed, but the stamp was not; in the case at bar the stamp was affixed, but the signature was not. There is no difference in principal between the two cases.

There was no error in the trial court's instruction upon the measure of damages. In the case of Lexington & Eastern Railway Co. v. Lyons, 104 Ky., 23, the court held that where the passenger was ejected from the train, the action must be limited to compensatory damages, and that mortification and humiliation consequent upon his ejection was a proper element of the damages recoverable. The same rule was declared in the case of Southern Railway in Ky. v. Hawkins, 121 Ky., 420. Of course, should force or violence be used, or an assault be committed, the damages would also embrace an instruction permitting punitive damages; but that element is not here.

Appellant complains that the demurrer to the petition should have been sustained, because the ticket presented as a part of the petition showed the obligation upon the passenger to have his ticket validated as a pre-requisite to his right to ride upon it, while the petition itself made no statement that the passenger had taken this step; that the exhibit, therefore, made the petition bad. This position is well taken; but the answer of the defendant set up the duty of the passenger to have his ticket validated; whereupon, by reply, Williams said that he had pre-

sented his ticket for validation. The pleadings, therefore, were complete in this aspect and formed all necessary issues for a proper submission of the case to the jury upon the real merits.

It is also urged for the appellant that the proof does not disclose that the agent to whom the ticket was presented at Knoxville was an agent for the Louisville & Nashville Railroad, but might have been no more than an agent for the Pullman Company. This argument overlooks the fact that the agent did affix to the ticket a stamp of the Louisville & Nashville Railroad.

Complaint is made of the instructions given by the trial court; but we are of opinion that they fairly presented the issues to the jury.

Of the verdict returned, approximately $240 was given as compensation for the plaintiff's mortification and humiliation. The plaintiff was treated with every courtesy by the conductor when the error in his ticket was discovered. The conductor held the train for some three or four minutes and went with Williams to the ticket office to see whether he could arrange the purchase of another ticket. He was subjected to no indignity, nor was he held up before the public in any unpleasant light. We consider the compensation to be very full; yet the mere fact that he was refused admittance upon the train and his baggage handed off must, in some sense, have mortified him. We are not prepared to say that his recovery of this small amount, therefore, was an excessive amount for this element of his damage.

We have considered the whole case somewhat more at length than the small amount involved would warrant; but the principles involved are important and seem to justify the consideration given to the case.

For the reasons given the judgment of the trial court is affirmed.