MARTIN GRADIN *vs.* ST. PAUL & DULUTH RAILWAY COMPANY.

February 13, 1883.

Negligence—Injuries to One (not a Passenger) on Railway Train by Permission of the Conductor.— One whose presence on a railway train is not wrongful may recover for injuries caused by the negligence of the carrier, although he was not a passenger in the ordinary sense of the term. One (the plaintiff) riding on a train, not a passenger train, of a railroad, (defendant,) with the consent or permission of the conductor, is not to be deemed a trespasser, and therefore barred of a recovery by his own wrong, at least in the absence of proof that the conductor had not authority to give such permission.

Appeal by defendant from an order of the district court for Ramsey county, *Wilkin,* J., presiding, refusing a new trial. The case is stated in the opinion.

*James Smith, Jr.,* and *J. J. Egan,* for appellant, cited *Eaton* v. *Delaware, etc., R. Co.,* 57 N. Y. 382; *Marvin* v. *Wilber,* 52 N. Y. 270; *Nicholson* v. *Erie Ry. Co.,* 41 N. Y. 525; *Robertson* v. *N. Y. & Erie R. Co.,* 22 Barb. 91; *Terry* v. *N. Y. C. R. Co.,* 22 Barb. 574, 586; *Bolch* v. *Smith,* 7 H. & N. 736; *Elkins* v. *Boston & M. R. Co.,* 23 N. H. 275.

*O'Brien & Wilson,* for respondent, cited *Nolton* v. *Western R. Co.,* 15 N. Y. 444; *Wilton* v. *Middlesex R. Co.,* 107 Mass. 108; *Sherman* v. *Hannibal & St. J. R. Co.,* 72 Mo. 62.

DICKINSON, J.* The action is for the recovery of damages for injuries suffered by the plaintiff, while riding on a train of the defendant, and through the negligence of defendant's agents. The defendant had undertaken, by contract with the C. N. Nelson Lumber Company, to leave its (defendant's) cars on the line of road, (between stations,) where they were to be loaded with stone by the employes of the lumber company, and the defendant was to transport them to a point on its line called Cloquet. The plaintiff was one of a party of men employed by the lumber company in loading the cars with

*Gilfillan, C. J., because of illness, took no part in this case.

stone and unloading them again at Cloquet. There was no express contract between the defendant and the lumber company respecting the carrying of these employes of the latter. For four or five days prior to the accident the business had been conducted as follows: The cars, being loaded by the employes of the lumber company, were taken up about noon of each day by a locomotive and train of the defendant, and run to Cloquet, the men who had loaded the cars riding upon them to Cloquet. There they unloaded the cars and got their dinner, and were taken back in the same way upon the empty cars, which were again left on the track to be reloaded. But one such trip was made each day. The plaintiff had been thus employed three days prior to the accident. On that day the cars had been taken to Cloquet and unloaded, and returned as usual to be reloaded, and the engine and train passed on. Afterwards, on the same day, a fire occurring upon the line of road between the place where the cars had been left and Cloquet, the engine, with the caboose and two wood-cars, with a party of railroad laborers, in charge of a conductor, returned, going towards Cloquet to put out the fire. There being no side-track where the stone-cars were standing, it was necessary to attach these cars, then only partially reloaded, to the train, and to take them along towards the fire. The evidence tends to show that, just before the train, thus made up, started, the plaintiff was upon one of the cars, engaged in the discharge of his duty, and that he did not afterwards get off the car. The fact is that the plaintiff and all his fellow-workmen got on the cars, or, being on them, remained there when the train moved off. It is very probable from the evidence, and the jury may well have found the fact to be, that the conductor who had charge of the train saw these laborers on the cars when the train started.

The evidence is conflicting as to whether the conductor forbade the plaintiff and his fellows to ride on the cars on this occasion; but, under the instructions of the court, the general verdict of the jury in favor of the plaintiff must be regarded as involving the finding that the men were not forbidden to go, at least in any manner intelligible to the plaintiff. He is a foreigner, and understands very little of the English language. The evidence bearing directly upon the

question of such prohibition, taken in connection with the probable fact, as disclosed by the evidence, that the conductor saw the men on the cars when the train started, and that all of them did go, well supports the conclusion of the jury. This, in connection with the fact that, for some days prior to this occurrence, the men had been accustomed to ride on the train for the prosecution of the undertaking with which defendant's contract of transportation was connected, warrants the further inference that, on this occasion, the men were transported on the cars by the tacit and implied consent and license of the conductor. The verdict of the jury may properly be regarded as deduced from such a finding of fact. The track on which this train was run is a short branch of the defendant's road, and the daily train above spoken of seems to have been the only one running on that branch road at that time. It does not otherwise appear whether or not the conductor had actual authority to carry passengers on his train.

The correctness of the instructions of the court to the jury as to the measure of defendant's duty in respect to carefulness, upon the theory that plaintiff was rightfully on the train, was not questioned upon the trial and is not now to be considered.

The defendant contends that it is not responsible for injuries sustained by plaintiff through the negligence of those operating the train, for the reasons that, as is claimed, the plaintiff was not a passenger, and there was no contract of carriage requiring the exercise of the care due from a common carrier to a passenger; the conductor had not authority to carry those not employed upon the train; his consent gave plaintiff no right to be there, and the defendant owed him no duty in respect to the manner of operating the train.

The obligation of a common carrier to the exercise of care exists not alone when imposed by contract, and a recovery for injury to one being transported, caused by the negligence of the carrier, is not confined to cases of the breach of a contract. Undoubtedly, in the ordinary carriage of passengers, there is a contract, express or implied, involving the obligation, as a matter of contract, to carry safely, and any negligence causing injury to the passenger is a breach of the contract, and gives a right of action upon it. But the same act of neg-

ligence which would constitute a breach of contract obligations in the case of the passenger, may also be a breach of the duty imposed upon all persons by the law, upon grounds of public policy, and give a right of action in *tort* to one injured thereby, if he be not barred of a recovery by his own wrong. It is not, therefore, important in this case that the plaintiff did not take passage as an ordinary passenger, or that he paid no fare,—*Jacobus* v. *St. Paul & Chic. Ry. Co.*, 20 Minn. 110, (125;)—nor whether the plaintiff stood in the proper relation to the defendant of a passenger, towards whom it owed the peculiar duty which grows out of such relation. Id.; *Wilton* v. *Middlesex R. Co.*, 107 Mass. 108.

It cannot be said as a matter of law that the plaintiff was wrong-fully on the car, or, as between himself and the defendant, a tres-passer. Immediately prior to the starting of the train, the plaintiff was engaged in the discharge of his duty upon the car, and must be deemed to have been there, and thus engaged, with the consent of the defendant. And, further, as we must consider the fact to be, the plaintiff was not directed or warned to go off the car by the con-ductor having charge of the train. Therefore, irrespective of the question as to the authority of the conductor to permit the plaintiff to ride on the train, the plaintiff does not appear to have been a tres-passer there. But, upon other considerations, we think the defendant cannot, upon the case before us, be deemed to have been a trespasser, or wrongfully on the train. Whether strangers should be allowed by the defendant upon other than passenger trains was a matter entirely within its own control. Any regulations which the defendant may have adopted in that regard were not presumably known to the plain-tiff, and, since he was riding on the train with the consent of that agent who had the general control of its operation, any want of au-thority of which the defendant would avail itself should be affirma-tively shown by it. Want of authority was not shown. We are not called upon to decide whether, if it had been proved that the con-ductor exceeded his authority in permitting plaintiff to ride on the train, (this fact being unknown to plaintiff,) the plaintiff would have been deemed a trespasser, or chargeable with such wrong on his own part as to forbid a recovery for the negligence of the defendant. The

plaintiff being on the train with the consent of the conductor, and, so far as appears, being rightfully there, the defendant was responsible for the negligence of its servants within the scope of their employment.

Order affirmed.

