### Louisville & Nashville Railroad Company v. Coquillard Wagon Works' Assignees.

(Decided March 16, 1912.)

Appeal from Henderson Circuit Court.

Railroad—Interstate Commerce Law—Act June 18, 1910—Freight Rates—Excessive Rate Not Enforceable.—Under the Interstate Commerce Law, section 6, as amended by the act of June 18, 1910, the courts have uniformly held that the carrier in the shipment of freight must charge the tariff rate, neither more nor less, and that where an excessive rate has been charged even though the arrangement had been entered into with the shipper for a cheaper rate, such agreement would not be enforced, it being the purpose of the law making power to put all shippers upon an absolute equality.

YEAMAN & YEAMAN, BENJAMIN D. WARFIELD and CHAS. H. MOORMAN for appellant.

MONTGOMERY MERRITT for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

The assignees of The Coquillard Wagon Works, at Henderson, Kentucky, instituted a suit against the Louisville & Nashville Railroad Company, in which they sought to recover $342, alleged to be due said company as a rebate on shipments made over said road from Big Hatchie, Tennessee, to Henderson. The company answered in two paragraphs. The first is a traverse. The second pleaded that the shipments of the timber in the rough, that is, the logs, to the company, and the shipment of the manufactured product by the company to various points in the United States were all regulated and controlled by the Interstate Commerce law, and that the rates which it charged for said shipments and collected were the reasonable, usual and legal freight rates on such shipments; it pleaded that the agreement set up in the petition, by which the defendant obligated itself to refund to the company a portion of the charges, was unauthorized, illegal and void and in violation of law, and it pleaded and relied upon the Interstate Commerce act in bar of plaintiff's right to recover. In an amended answer, the defendant further pleaded that all of the shipments from Big Hatchie, Tennessee, to Henderson, Kentucky, were made prior to June 4, 1908, and that, during the time when said shipments were being made, the only lawful rate in effect upon logs and rough material, from Big Hatchie, Tennessee, to Henderson, Kentucky, was ten cents per hundred pounds, as published in the defendant company's tariff, which became operative on January 1st, 1905, and was in full force and effect when these shipments were made; that under said tariff it charged, collected and retained ten cents per hundred for all materials so shipped by the plaintiff company over its road. In a reply the plaintiffs traverse all the material allegations of the answer, as amended, and also plead that the agreement which the defendant company entered into with plaintiff was such as it was in the habit of making with customers using its road. The affirmative matter in the reply was traversed. In an amended petition, thereafter filed, the plaintiffs alleged that they had shipped over the defendant company's road 1,253,007 pounds of material manufactured out of logs which it had theretofore shipped over defendant's road from Big Hatchie to Henderson. This amended petition was traversed, and the case submitted to the court for judgment without the intervention of a jury.

The contract between the parties was evidenced by certain letters that passed, and they were filed with and made a part of the record and considered by the trial judge. It appears that, prior to June 4, 1908, the regular schedule tariff on goods shipped between the points of Big Hatchie, Tennessee, and Henderson, Kentucky, was ten cents per hundred pounds. On June 4, 1908, a schedule was adopted making a reduction of two cents per hundred pounds on all goods reshipped over its lines, and this traffic arrangement remained in effect until July 1, 1909, when a tariff rate of ten cents per hundred was posted. All of the logs were shipped from Big Hatchie, Tennessee, to Henderson between June 26th, 1907, and February 13, 1908, but the manufactured product was not reshipped from Henderson over the defendant company's lines for some time thereafter, and when a portion of it, at least, was reshipped, the tariff of June 4, 1908, was in effect.

It is the contention of appellees' counsel that, inasmuch as the tariff of June 4, 1908, gave a rate of eight cents on all raw material shipped from Big Hatchie, Tennessee, into Henderson, where the manufactured product was shipped out again over the defendant's road, the plaintiff company is entitled to the benefit of that schedule on the raw material shipped from Big Hatchie into Henderson by it under the old schedule of ten cents per hundred pounds. This is the view the lower court took of the matter and, accordingly, he entered a judgment for $250, this being the two cents per hundred on the 1,253,007 pounds of manufactured products shown to have been shipped from Henderson over the defendant's road. The railroad company appeals.

This was an interstate commerce shipment and the rights of the parties must be determined by the Federal Statute regulating such shipments. At the time all of the logs were shipped, the regular schedule rate from Big Hatchie, Tennessee, to Henderson, Kentucky, was ten cents per hundred pounds. Plaintiff shipped 1,712,100 pounds of logs in the rough, and was required to pay to the railroad $1,712 freight thereon, this being the exact tariff schedule. In the petition the assignees sought to recover two cents per hundred pounds rebate on this freight, amounting to $342. In other words, the plaintiff was seeking in this suit to have enforced an agreement which was made with the railroad company by which the latter was to refund to it two cents per hun-

dred pounds on this shipment. To hold that it might do so, or should be required to do so, would be in effect to require the railroad to give to the plaintiffs a preferential rate, which is directly in conflict with the provisions of the Interstate Commerce law. Section 6, as amended by the act of June 18, 1910, provides that:

"No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengeres or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariffs filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, or charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs: Provided, That wherever the word 'carrier' appears in this act it shall be held to mean 'common carrier.' "

Various cases have arisen where there has been an attempt to evade the provisions of this act, and the court has uniformly held that the carrier, in the shipment of freight, must charge the tariff rate, neither more nor less, and that, where such rate had been charged, even though an arrangement had been entered into with the shipper by which he was given to understand that he was to have a cheaper rate, such agreement would not be enforced.

In Chesapeake & Ohio Railroad Co. v. Maysville Brick Co., 132 Ky., 643, the questions involved in this case were fully considered. The Maysville Brick Co. had, in that case, a contract with the railroad for the transportation of brick from Maysville to Frankfort, Kentucky, at four cents per hundred pounds. The tariff rate was seven. It was agreed between the shipper and the railroad that the consignee was to pay the freight and deduct it from the price of the brick. When the brick were delivered in Frankfort the consignee was required to and did pay the tariff rate of seven cents per hundred, and deducted this sum from the purchase price.

The Maysville Brick Co., relying upon its contract, sought to recover of the railroad the difference between the contract price and the tariff or schedule price, to-wit, three cents per hundred. The lower court decided for plaintiff, but upon appeal here it was held that the contract by which it was agreed that the plaintiff was to have a rate of four cents per hundred was illegal and void and in direct violation of sections 214 of the Constitution and 817 of the Kentucky Statutes. No recovery was allowed, because a common carrier is, by the provisions of the Constitution and Statute, supra, prohibited, under heavy penalty, from making a preferential agreement for the shipment of goods, and the contract upon which it was based was held void because against public policy, and the court would not enforce a contract made in open violation of a statute.

Section 2 of the Interstate Commerce Act is, in effect, section 817 of our statute, and the Federal courts have likewise held that contracts made in violation of the provisions of the Interstate Commerce Act as to rates will not be enforced, because against public policy, and this whether the shipper knew that the agreement into which he was entering was in violation of the law or not. Savannah, &c., Ry. Co. v. Bundick, 94 Ga., 775; Hancock v. Railroad Co., 145 U. S., 416; Southern Ry. Co. v. Harrison, 119 Ala., 539; Texas & Pacific Ry. Co. v. Mugg, 202 U. S., 242. In this latter case it was held that, where a contract had been entered into with a carrier for the transportation of goods from one State to another at a rate less than that provided for in the schedule and approved and in force at the time, whether he knew it to be less or not, he was not entitled to recover the goods, or damages for their detention, until he had paid the schedule charges. The opinion in all of these cases is bottomed upon the idea that a contract made in violation of a statute is void, and that where a litigant can not establish his claim except by relying upon an illegal contract, he is not entitled to recover.

In the case at bar it is not entirely clear whether the shipper knew that the arrangement which he made with the company was for a freight rate less than the tariff rate or not. It is probable that he did, but whether he did or not is wholly immaterial. The fact remained that he was procuring a preferential rate in direct violation of the statute. This statute was passed for the purpose

of preventing preferences. Practical experience had demonstrated that unfair competition was frequently brought about by means of preferential freight rates, and this practice was not infrequently carried to such an extent as to give to the favored individual or corporation a practical monopoly in the line of his business. Competition was destroyed. The less fortunate saw his business rendered unprofitable, if not ruined, by his favored rival. To remedy this evil the statute was passed. It was the purpose of the law-making power to put all shippers upon absolute equality. This could only be done by denying to the carrier the right to charge to any one a less rate than was charged to another. The enforcement of this law has had a most salutary effect upon trade, and while isolated instances will necessarily arise where its enforcement apparently works a hardship, in the main it is productive of much good. Under the existing law no private contract for the shipment of goods can be made so far as rates are concerned. These are fixed, and apply alike to all. The only question open is, to determine the classification of the freight when it is offered for shipment. The company must charge, and is entitled to receive, the tariff rate, and when it was made to appear that the tariff rate in force when this shipment was made was ten cents per hundred pounds, and that this was the amount which the railroad company had received, and that plaintiff was relying upon a special arrangement, by which it was to have its freight transported for a rate less than the tariff rate, the judgment should have been for the defendant.

Judgment reversed and cause remanded, with instructions for further proceedings consistent herewith.