## Boston v. Southern Pacific Company.

(Decided May 15, 1917.)

### Appeal from Jefferson Circuit Court.

1. Carriers — Interstate Commerce—Shippers. — Under the act of Congress creating the Interstate Commerce Commission and the amendments thereto, when a carrier files a schedule of tariff and rates for interstate shipping and passenger travel, and publishes same as required by that act and its amendments, both the carrier and passenger or shipper are bound by such rates and conditions contained in the schedule after it is approved by the Interstate Commerce Commission, and no agent of the carrier can bind it contrary to such terms, either intentionally or by a mistake.

2. Carriers—Interstate Commerce—Ticket.—Even before the passage of such act it was competent for the carrier to stipulate that the original purchaser of a ticket, round-trip or otherwise, should use all of it, including the return trip, himself, and should not transfer any portion of it to another, and that if it should be so transferred in violation of such stipulation it should be void in the hands of the transferee.

3. Carriers — Passengers — Interstate Commerce — Ticket.—Plaintiff purchased in the State of California the return portion of a roun-trip ticket which had been sold at Horse Cave, Kentucky, to some third person; at the time he purchased the return portion of the ticket he signed his name as the original purchaser and afterwards had the ticket validated. The inspector of tickets for the railroad company on whose line the plaintiff would first take passage declined to honor the ticket because upon inquiry he learned that plaintiff was not the original purchaser of same, and thereupon took up the ticket. Held, that under the provisions of the Interstate Commerce Act as amended, and which had been complied with by the seller of the ticket, the inspector had a right to take it up and that plaintiff cannot maintain a suit against he defendant for having done so.

HUBBARD & HUBBARD for appellant.

HUMPHREY, MIDDLETON & HUMPHREY and HORACE L. WALKER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In October, 1913, the appellant (plaintiff) went from Horse Cave, Kentucky, to California. He purchased from the agent of the Louisville & Nashville Railway Company at Horse Cave, a one-way tourist ticket. Testifying as to what occurred at the time between him and the ticket agent, plaintiff upon the trial said:

"I told him I didn't want a round-trip ticket at all. The train was about due and he said well when I got ready to come back—Smith said it in Logsden's presence and Logsden said so, too—when I got ready to come back to let him know and he would save me some money on the ticket and I told him all right."

The Smith referred to was not the agent of the Louisville & Nashville Railway Company, nor was he the agent of the appellee (defendant), but did claim to be a traveling agent for the Missouri Pacific Railway Company, an independent and separate corporation from either of the two mentioned. He lived at Horse Cave, and appears to have loafed around the depot of the Louisville & Nashville Railway Company at that place upon occasions, and would sometimes, when a rush was on, assist Logsden, the agent at that place, to fill out tickets. But even this conduct on his part was neither known nor recognized by the Louisville & Nashville Railway Company, and he was in no sense agent for it.

Some two years prior to October, 1913, one Pedigo, a neighbor and acquaintance of the plaintiff, had gone to California, and after plaintiff arrived there he and Pedigo got together and were working at the same place or in the same neighborhood in August, 1914. At the latter date the two concluded to return to Kentucky, and they wrote a letter to Logsden and Smith at Horse Cave for a return ticket from San Francisco, California, to Horse Cave, Kentucky, via Los Angeles, California. In due time they received information from Smith that he would meet them at a place called Woodlake, which is not far from San Francisco, and about 275 miles from Los Angeles, and on the line of railroad owned and operated by the defendant. At the appointed time Smith met the plaintiff and Pedigo at that place and sold to each of them the return portion of a round-trip ticket which had been issued on August 25, 1914, at Horse Cave, to some one whose name does not appear from the record. The price paid for the return portions of such tickets was $55.00 each, which Smith collected. The tickets provided

that they should be validated by the agent of the defendant at Los Angeles. When the tickets were purchased from Smith (which was done in a private compartment, and not at any railroad or ticket office) the plaintiff signed his name upon one of them as the original purchaser at Horse Cave, and likewise signed Pedigo's name to the other one as such original purchaser. The two rode on the tickets from Selma, California, to Los Angeles, a distance of about 275 miles, and when they got ready to start for home the plaintiff went to the city ticket office of the defendant and had his ticket validated. He, himself, procured the validation of Pedigo's ticket not at the city ticket office of the defendant, but at its station in Los Angeles. This method of validating one of the tickets at one place and the other at another was in pursuance to directions given to plaintiff and Pedigo by Smith at the time the tickets were purchased at Woodlake. When the boys started through the gate at Los Angeles for the purpose of taking the train, the inspector or examiner of tickets, discovering that the signatures of the alleged original purchasers had been signed with pencil instead of with pen and ink, became suspicious and made inquiries about the matter. He was first told by plaintiff and Pedigo that they had purchased the tickets at Horse Cave from the agent of the Louisville & Nashville Railroad Company on August 25, 1914, the date each of the tickets bore, but further cross-examination developed the facts hereinbefore recited with the result that the tickets were taken up and the boys informed that they could not be permitted to travel on them. Smith was notified by wire, and within five days appeared and provided the two boys with return tickets which they immediately used in returning home.

This suit was filed by plaintiff against the defendant, with a similar one by Pedigo, to recover damages for the alleged wrongful acts of the defendant in taking up the tickets and refusing to allow the plaintiffs to use them in returning home, it being averred in the petitions, in addition to the expenses of five days' delay in Los Angeles, the price of the return ticket and other items, that the examiner or inspector who took up the tickets used insulting and abusive language toward the plaintiffs whereby they were humiliated and suffered great mental pain and anguish, for all of which they each sustained damages in the sum of $7,579.25.

The first paragraph of the answers denied the averments of the petition, and the second paragraph averred in substance that the tickets which plaintiffs held, and which were taken up in the manner complained of, were reduced rate round-trip tickets authorized to be sold to the original purchaser upon consideration of the agreements, stipulations and privileges contained in a tariff schedule of rates which had been made out, published and filed with the Interstate Commerce Commission, as provided by the Act of Congress creating that commission, and subsequent amendments; that the plaintiffs were attempting to use the tickets in violation of the terms contained in them, and also in the schedule of tariff filed with the Interstate Commerce Commission, and it, therefore, had a right to take up the tickets in the manner complained of.

A reply completed the issues and a trial before a jury resulted in a verdict for the defendant in each case, they being tried together, and from the judgment dismissing plaintiff's petition he prosecutes this appeal, but Pedigo, apparently being satisfied, has failed to do so.

Among the stipulations forming a part of the consideration for the reduced rate which are found in the ticket, and as a part of the schedule filed with the Interstate Commerce Commission, are these:

"5th. Identification of holder as original purchaser must be established by signature and otherwise, to the satisfaction of any agent or conductor whenever requested, and

"6th. If presented by any person other than original purchaser this ticket will be void and may be confiscated by any agent or conductor."

At the bottom of all of the conditions forming a part of the contract, and just above the signature of the purchaser, it is said: "In consideration of the reduced fare at which this ticket is sold, I hereby accept all conditions hereof."

Numerous errors are discussed by counsel for plaintiff and urged upon us as grounds for reversal, but being convinced that the judgment is correct, we will consider only such as will appear in the course of this opinion and which we deem decisive of the questions involved.

It is insisted by plaintiff's counsel that Smith, the one from whom the tickets were purchased, was the

agent of the Louisville & Nashville Railroad Company who sold them, and that it was acting as agent for the defendant who is bound by the act of Smith in selling the tickets. Upon what testimony this contention is made, we acknowledge our inability to discover from the record. Smith did not testify, and it is not claimed that he even posed as the agent of the Louisville & Nashville Railroad Company. The occasional clerical assistance which he might have rendered Logsden, the agent of the Louisville & Nashville Railway Company, at Horse Cave, did not in any sense make him the agent of that company so as to bind it for any of his actions. But, if we were mistaken in this, as we shall hereafter see, plaintiff had no right to use the return portion of the ticket sold to him by Smith, even though the latter was the regular agent of the Louisville & Nashville Railroad Company, at the place of sale.

We have seen that the plaintiff was not the original purchaser of the ticket taken up by the defendant, and the record fails to disclose who that person was, but that it was some one other than the plaintiff is not only manifest, but admitted. That a common carrier of passengers at common law, independent of any statutory regulation of the subject, had the right to impose the condition that only the purchaser of the ticket could use any portion of it, cannot, in view of the authorities from this state and from other jurisdictions, be gainsaid. It was so held by this court in the cases of B. & O. S. W. R. R. Co. v. Hudson, 117 Ky. 995; Southern Railway Co. v. Cassell, 28 Ky. Law Rep. 1230, and I. C. R. R. Co. v. Williams, 147 Ky. 52. The same doctrine was annunciated by the Supreme Court of the United States in its opinion in the case of Mosher v. St. Louis, Iron Mountain & Southern Railway Company, 127 U. S. 390.

The tickets involved in the above named cases contained conditions similar to the ones found in the ticket here involved. In each of the cases the tickets called for an interstate trip, and in upholding the condition requiring a passenger to identify himself before any agent or conductor of the railroad company, the United States Supreme Court in the Mosher case said:

"The sixth condition, by which the ticket is to be void if the plaintiff does not sign his name and otherwise identify himself, whenever called upon so to do by any conductor or agent of either of the lines over which he

may pass, is evidently intended as an additional precaution against a transfer of the ticket either in going or in returning, and not as an alternative or substitute for the previous condition to the validity of the ticket for a return trip."

In the Hudson case the rule upon the subject is thus stated:

"A condition, upon a return excursion ticket sold by the railroad company at a reduced rate, requiring the holder to identify herself as the original purchaser of the ticket by writing her signature on the back thereof, and, if this is not satisfactory to the validating agent of the company, to produce other proofs of the fact of identity, is neither unreasonable nor unusual; and the validity of such conditions has, we believe, been universally upheld, as based upon a sufficient consideration. See Hutchinson on Carriers, section 580b; Ray on Negligence of Imposed Duties, Carriers of Passengers, sections 511, 512."

But independent of the common law upon the subject the Act of Congress of June 29, 1906, amending the Interstate Commerce Law, after providing for the filing and publication of schedules of not only passenger but freight rates, provides:

"No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any sevice in connection therewith, between the points named in such tariffs than the rates, fares and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

In interpreting the provision of the Federal statute just quoted, this court has uniformly held that both carrier and passenger or shipper are bound by the rates,

terms and conditions found in the schedule prepared, published and filed as therein required, and that no agent of the carrier had a right, either intentionally or through mistake, to vary those terms, and that the carrier would not be bound if the agent attempted to do so. L. & N. R. R. Co. v. Coquillard Wagon Works, 147 Ky. 530, and L. & N. R. R. Co. v. Allen, 152 Ky. 145.

The question, in one form or another, has been before the Supreme Court of the United States in many cases, some of which are Atchison, Topeka & Santa Fe Ry. Co. v. Robinson, 233 U. S. 173; Boston & Maine R. R. Co. v. Hooker, *idem,* 97; Chicago & Alton R. R. v. Kirby, 225 U. S. 155; L. & N. R. R. Co. v. Maxwell, 237 U. S. 941; Southern Railway Co. v. Prescott, 240 U. S. 632; Bitterman v. L & N. R. R. Co., 207 U. S. 205; T. & P. Ry. Co. v. Mugg, 202 U. S. 242.

There are many other cases from the Federal Courts determined by both the Supreme Court and inferior ones upholding the same doctrine, and as to which there is no opinion to the contrary.

Illustrating the rule as held by the Supreme Court of the United States, we take from the Bitterman case the following:

"That the complainant had the lawful right to sell non-transferable tickets of the character alleged in the bill at reduced rates, we think is not open to controversy, and that the condition of non-transferability and forfeiture embodied in such tickets was not only binding upon the original purchaser but upon any one who acquired such a ticket and attempted to use the same in violation of its terms is also settled. . . . . And when the restrictions embodied in the act concerning equality of rates and the prohibitions against preferences are borne in mind the conclusion cannot be escaped that the right to issue tickets of the class referred to carried with it the duty on the carrier of exercising due diligence to prevent the use of such tickets by other than the original purchasers, and, therefore, caused the non-transferable clause to be operative and effective against any one who wrongfully might attempt to use such tickets. Any other view would cause the act to destroy itself, since it would necessarily imply that the recognition of the power to issue reduced rate excursion tickets conveyed with it the right to disregard the prohibitions against preferences which it was one of the

great purposes of the act to render efficacious. This must follow, since, if the return portion of the round trip ticket be used by one not entitled to the ticket, and who otherwise would have had to pay the full one way fare, the person so successfully traveling on the ticket would not only defraud the carrier but effectually enjoy a preference over similar one way travelers who had paid their full fare and who were unwilling to be participants in a fraud upon the railroad company.''

In the Maxwell case, *supra*, the Supreme Court, in construing the statute and upholding the rule under consideration, said:

''Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.''

Further along in the opinion, quoting from the case of Kansas Southern Railway v. Carl, 227 U. S. 639, the court said:

''As was said in Kansas Southern Railway Co. v. Carl, *supra*: 'Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay. The shipper's knowledge of the lawful rate is conclusively presumed, and the carrier may not be required to surrender the goods carried upon the payment of the rate paid, if that was less than the lawful rate, until the full legal rate has been paid.' It was 'the purpose of the act to have but one rate, open to all alike and from which there would be no departure.' ''

It is shown that the price which plaintiff paid Smith for the return portion of the ticket which he bought was much less than that fixed in the schedule filed with the Interstate Commerce Commission under the provisions of the statute to which we have referred. To have per-

mitted the plaintiff to use the ticket for his return trip would not only have violated the stipulation found in it that its return portion should be used only by the original purchaser, but would also have given him the preference over other passengers making the same trip by allowing him a cheaper rate for the same class ticket furnishing the same accommodations.

It cannot be successfully contended that plaintiff had the right to use his ticket, notwithstanding the matters to which we have referred, after the agent of the defendant had validated it, because from the proof such validation was clearly produced through fraud and deceit practiced by plaintiff and his companion, but whether so or not such validation could amount to no more than the agreement by the validating agent to extend to plaintiff the privileges which the ticket afforded in consideration of the price paid. If this was lower than the same accommodations given to others, it was a discrimination in favor of plaintiff which the agent could not do so as to bind the defendant, whether done intentionally or by mistake. What an agent could not do originally when selling the ticket so as to bind the defendant, could not be accomplished by another agent through acts otherwise constituting waiver or ratification. It would, therefore, necessarily follow that the defendant was not bound to honor the ticket, although it had been validated by one of its agents. Moreover, one of the stipulations in the ticket is that the holder must identify himself to the agents and conductors of the carrier at any time when demanded. This evidently gave any agent or conductor having any connection with the use of the ticket authority to inquire into the identification of the holder of the ticket at any time, and if upon such inquiry it should be developed that the ticket had been wrongfully procured, to take it up.

The cases of C., N. O. & T. P. Ry. Co. v. Carson, 145 Ky. 81; L. & N. R. R. Co. v. Fish, 127 S. W. 519 (Ky.), and L. & E. R. R. Co. v. Lyons, 104 Ky. 23, and other like cases relied upon by counsel for appellant are not pertinent here. The facts sought to be shown by the proof and alleged as constituting the mistake or omissions of the agent selling the tickets involved in those cases were such as it was competent for the agent to originally agree to and thereby bind his principal. They were not such as were inhibited by a positive statute, or any

other rule of law, and for this reason the inapplicability of the cases to the conditions presented by this record are at once apparent. We are, therefore, clearly of the opinion that under the facts of this case, and the law as applicable thereto, the trial court correctly held that the defendant had the right to and properly took up plaintiff's ticket.

The trial court, however, was of the opinion that it was its duty, under the pleadings and proof, to submit to the jury the question of plaintiff's humiliation and mental anguish alleged to have been produced and suffered by the insulting language which the examiner or inspector of tickets at Los Angeles is alleged to have applied to plaintiff at the time the ticket was taken up. Plaintiff testified to the use of language calculated to bring about such a state of feeling, but the preponderance of the evidence is that none such was used. It might be doubtful, in view of the fact that plaintiff had an illegal ticket, that such conduct on behalf of the inspector or examiner would furnish an element of damages in this character of suit, but inasmuch as the jury, under appropriate instructions, and about which no complaint is made, found in favor of the defendant upon that issue, we will not enter into a discussion as to whether it was properly submitted to the jury.

Upon the whole case we find no error prejudicial to the substantial rights of the plaintiff, and the judgment is affirmed.