# FRED GRUHL v. NORTHERN PACIFIC RAILWAY COMPANY AND OTHERS.[1]

June 21, 1918.

No. 20,872.

**Carrier — exchange of tickets — liability of defendant.**

Plaintiff, as caretaker, accompanied a carload of live stock shipped by him from Glyndon to South St. Paul over the Great Northern Railway. About the same time he shipped another carload over the defendant's road from Glyndon to the same destination, his assistant Goltz accompanying as caretaker. Each shipping contract provided for the caretaker's return passage upon the carrier's passenger train. Together the two men applied to the ticket agent representing both carriers, at St. Paul Union Station, for return transportation, and each received the proper ticket. It is *held*:

(1) The person to whom such a return ticket is issued is, when carried thereon, a passenger for hire, entitled to the high degree of care accorded such a person by a common carrier.

(2) The evidence justified the jury in finding that, with the knowledge and consent of the ticket agent, and in his presence, plaintiff and his assistant exchanged these return tickets; that in so doing, and in boarding defendant's passenger train and receiving transportation thereon there was no intention on the part of the plaintiff, or any one concerned, to defraud or to violate any provision of the shipping contract, and that there was, in fact, no substantial violation thereof, and that plaintiff was a passenger for hire and not a trespasser on the trip in question.

Action in the district court for Clay county to recover $21,000 for injuries received after alighting from the train of defendant railway. The separate answers specifically denied that plaintiff was a passenger on the train. The case was tried before Nye, J., who at the close of the testimony granted motions to dismiss the action as to defendants Allen and Daly and denied a motion to direct a verdict in favor of defendant Conway and defendant railway company, and a jury which returned a verdict for $1,300 against defendant Conway and defendant company. De-

[1]Reported in 168 N. W 127.

fendants' motion for judgment notwithstanding the verdict was denied, Roeser, J. From the judgment entered pursuant to the order for judgment, defendant Conway and defendant company appealed. Affirmed.

*C. W. Bunn* and *D. F. Lyons,* for appellants.

*Charles S. Marden,* for respondent.


HOLT, J.

Plaintiff secured a judgment against defendant, a common carrier, awarding substantial damages for personal injuries caused by its alleged negligence in carrying plaintiff beyond the station where he was to leave the train on which he was riding. Defendant appeals. There was no motion for a new trial.

If the evidence justifies the conclusion that plaintiff, in riding upon defendant's train, at the time in question, was a passenger and not a trespasser, the judgment is conceded to be unassailable on this appeal.

In the first part of February, 1916, plaintiff, a farmer, stock buyer, and shipper, residing near Glyndon, had two carloads of live stock that he desired to ship to the South St. Paul market. The Great Northern Railway, as well as defendant, operates a railway line between the places mentioned. Plaintiff patronizes both companies. Under the ordinary shipping contracts, one carload of this live stock was delivered to the Great Northern Railway Company, and the other to defendant to be transported as indicated. Plaintiff personally accompanied the Great Northern shipment as caretaker of the stock; and Abe Goltz, plaintiff's assistant, went as caretaker with the stock carried by defendant. Plaintiff was a party to both shipping contracts as consignor, and paid the freight. These contracts contained the usual provision for the return passage of the caretaker of the stock upon the carrier's passenger train, under certain rules in force. It is not deemed necessary to set out these provisions or rules in full. The substance is that only the person actually attending the stock is entitled to transportation back; and, to prevent the misuse of this right, the signature of the caretaker must be indorsed by him on the shipping contract so that the ticket agent, whose duty it is to issue the return ticket, may have some means of satisfying himself of the identity of the person applying for the transportation. On the evening of February 9, 1916, plaintiff in company with Goltz applied to

the proper ticket agent, representing both companies, at St. Paul Union Station for return passage, and the special tickets therefor were duly issued. When these were received Goltz stated that Gruhl and he desired to trade tickets so as to get Gruhl home sooner, they laboring under the mistake that defendant's train was due to arrive at Glyndon first. The agent answered that he did not care what they did with those tickets. They then and there exchanged them, and repaired to the respective trains then about to start. Plaintiff testified that he was acquainted with defendant's conductor and trainmen, having often ridden on trains in their charge. The ticket issued to Goltz was by plaintiff tendered to and accepted by the conductor, and the latter placed the customary check slip in the holder above the seat occupied by plaintiff in the smoker. He testified that this check slip was not taken up as the stop was made for Glyndon, nor was the station called out, and he did not know that his destination had been reached until the train was leaving the depot, when he hurriedly walked to the door with his luggage. The brakeman then noticed him and stopped the train, but would not back up so as to let plaintiff alight at the platform. Plaintiff got off, and, in walking back to the station, fell over some wires, as he claims, receiving the severe injuries for which the damages were awarded.

The trial court instructed the jury, in substance, that if plaintiff fraudulently impersonated Goltz and thereby obtained the ride on defendant's train there could be no recovery, but if they should find that plaintiff was riding upon a stockman's ticket issued and accepted without fraud or misrepresentation and which was used by plaintiff in good faith as railway fare then the company owed him the same duty of care as any passenger for hire. If, "there was an honest mistake made by Mr. Gruhl and also a mistake on the part of the railway company in reference to the use of this ticket by Mr. Gruhl, that is, that both parties were mistaken, in good faith, in reference to that ticket, and that the ticket was recognized as valid and proper fare, used in good faith by the plaintiff, then the fact that it may have been or was a technical violation of the statute would not preclude the plaintiff from recovery in this action; but if there was any fraud, any misrepresentation, or any bad faith on the part of the plaintiff whatsoever, in the use of that ticket, then * * * he would be a trespasser and could not recover." No excep-

tion was taken to this statement of the law, and we are inclined to view it as correct.

There can be no doubt that the ticket upon which plaintiff traveled was not a gratuitous pass. The consideration therefor is found in the freight charges and other mutual benefits derived under the shipping contract. New York Cent. R. Co. v. Lockwood, 17 Wall. 357, 21 L. ed. 627; Baltimore & O. S. W. Ry. Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. ed. 560; and Tripp v. Michigan Cent. R. Co. 238 Fed. 449, 151 C. C. A. 385, L.R.A. 1918A, 758, where numerous authorities are cited.

The strict rules and regulations, under which return transportation is furnished caretakers of live stock, are no doubt adopted for the purpose of preventing actual fraud and to assure to the carrier payment of the regular passenger fare from every traveler not entitled to free or reduced passage under the terms of the statute or a shipping contract similar to this. Here there can be no claim but that on the night in question Gruhl was entitled to transportation from St. Paul to Glyndon and so was Goltz, though by different carriers. Each had taken care of a carload of live stock shipped by plaintiff under contracts of the same sort. Each desired to return at the same time. It can be readily seen that plaintiff as well as Goltz and the ticket agent, who represented both carriers at the Union Station, might think that it would be wholly immaterial to the carriers whether Gruhl and Goltz traded the tickets. Each carrier would carry back but one caretaker on account of the carload of live stock transported from Glyndon to South St. Paul. No one thought it would make the slightest difference to either carrier whether the one or the other of these two men was conveyed by it. The jury could well find an absence of intent on the part of either plaintiff, Goltz, or the ticket agent to violate any law or circumvent any contract provision. The answer that the ticket agent gave to the question in respect to the trade of the tickets as well as the acceptance, by defendant's conductor, of a ticket purporting to be issued to Goltz when presented by Gruhl, would justify a finding that the latter was accepted as a passenger. We do not overlook the fact that the conductor testified he did not know Gruhl by name, but Gruhl's testimony was that he knew the conductor and had often been carried on his train. He was a frequent shipper of live stock

and, presumably, when returning with this conductor traveled on a live stock caretaker's return ticket. The conductor also testified that the custom is to accept these tickets when presented without question. From the conductor's testimony it would appear that the identification and the right to the use of the return ticket was largely left to the ticket agent, whose duty it was to issue them. The jury could find that in the transaction plaintiff acted in good faith and without deception; that he was accepted as a passenger; and was treated as such, except as to the unintentional omission to notify him that his destination had been reached. We think such findings would bring the case within the principles which sustained a recovery in Southern Pac. Co. v. Schuyler, 227 U. S. 601, 33 Sup. Ct. 277, 57 L. ed. 662, 43 L.R.A.(N.S.) 901, where a mail clerk off duty was killed, while being carried upon a certificate giving the right of free transportation only when on duty.

The technical unintentional violation of some provision of a contract, or even of a statute, should not bar a recovery for the carrier's negligence where the injured party in good faith and with no intent to defraud obtains transportation and is accepted and treated as a passenger. Under the peculiar circumstances of these two shipments by plaintiff there was nothing which would make the trade of the two caretakers' return tickets a violation in spirit or in substance of G. S. 1913, § 4335, or the provisions of the shipping contracts. The strict rule of a carrier's responsibility to passengers in the interests of the safety of citizens of the state forbids a construction of this shipping contract and its privileges that would readily transfer to the trespasser class one who in good faith boards a train as a passenger and is ostensibly received as such. The following authorities would seem to support the conclusion that plaintiff was not a trespasser: Jacobus v. St. Paul & Chicago Ry. Co. 20 Minn. 110 (125), 18 Am. Rep. 360; Gradin v. St. Paul & D. Ry. Co. 30 Minn. 217, 14 N. W. 881; McNeill v. Railroad Co. 135 N. C. 682, 47 S. E. 765, 67 L.R.A. 227; Bradburn v. Whatcom Co. Ry. & Light Co. 45 Wash. 582, 88 Pac. 1020, 14 L.R.A. (N.S.) 526; John v. Northern Pac. Ry. Co. 42 Mont. 18, 111 Pac. 632, 32 L.R.A.(N.S.) 85; Gabbert v. Hackett, 135 Wis. 86, 115 N. W. 345, 14 L.R.A.(N.S.) 1070.

Defendant relies on McVeety v. St. Paul, M. & M. Ry. Co. 45 Minn. 268, 47 N. W. 809, 11 L.R.A. 174, 22 Am. St. 728; Alward v. Oakes, 63 Minn. 190, 65 N. W. 270; Illinois Cent. R. Co. v. Messina, 240 U. S. 395, 36 Sup. Ct. 368, 60 L. ed. 709; Boston v. Southern Pac. Co. 175 Ky. 641, 194 S. W. 814; and Shoenig v. Atlantic Coast Line R. Co. 17 Ga. App. 350, 86 S. E. 940. In the two cases mentioned from this court stress was placed upon the fact whether or not the injured party there involved knew that in obtaining passage on the train a rule of the carrier was violated. And it is said here that Gruhl must be held to have had knowledge of the law and the terms of his contract which forbade this exchange of tickets. As stated above in this instance there is room for a finding that the violation, if any, was not of substance and so technical that neither Gruhl nor the ticket agent was cognizant of the possibility that either carrier would claim anything of the sort. In the Illinois Cent. R. Co. case, the person obtained a free ride in the engineer's cab, and it was held this was such a clear violation of the Federal anti-pass act that he could not be considered a passenger. There is in that case a vigorous dissent by Justice Hughes concurred in by Justice McKenna. The last two of the above cited cases relate, the one, to a controversy arising over a refusal to honor a nontransferable ticket presented by a person not entitled to its use, and the other, to a refusal to honor the ticket after the time limit had expired, and are not determinative here.

Our conclusion is that the issue upon which the right of recovery was made to depend was correctly stated by the trial court, and that the evidence on the issue supports the verdict.

The judgment is affirmed.