## THOMAS FRASER v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 5, 1926.

No. 25,114.

**Verdict for personal injury sustained.**
   1. The verdict is sustained by the evidence, and the motion for judgment non obstante was properly denied.

**Violation of antipass statute does not prevent recovery by passenger in caboose, injured by gross negligence of trainmen.**
   2. One whom the jury found to have been in the caboose of defendant by permission of the conductor of the train at the time another of defendant's trains, through gross negligence of those in charge of such trains, collided therewith, is not precluded from recovering for

[1]Reported in 207 N. W. 644.

injuries because of a violation of the antipass statute, G. S. 1923, § 4807, the jury also having found that he had no knowledge of defendant's rule forbidding the conductor to permit passengers to ride on the train; such statute not being enacted for the safety of either the persons of those carried gratuitously in disobedience of the rules of the carrier, by the ones in charge of trains, or of the employes or property of the carrier.

**Discretion of trial court not abused.**

3. There was no abuse of discretion in opening the case for additional testimony, or in denying a new trial because of surprise and newly discovered evidence.

Appeal and Error, 3 C. J. p. 828 n. 70; 4 C. J. p. 818 n. 77, 78, 79; p. 835 n. 67, 68; p. 836 n. 77.
Criminal Law, 16 C. J. p. 84 n. 90.
Evidence, 22 C. J. p. 151 n. 88 New.
Judgments, 33 C. J. p. 1185 n. 56.
Negligence, 29 Cyc. p. 525 n. 82, 83.
New Trial, 29 Cyc. p. 1009 n. 54.
Railroads, 33 Cyc. pp. 818 n. 21; 891 n. 63 New.
Trial, 38 Cyc. p. 1360 n. 51, 52; p. 1361 n. 53.

Action in the district court for Beltrami county to recover for personal injuries. The case was tried before Stanton, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*F. G. Dorety, A. L. Janes, J. H. Mulally* and *Thayer C. Bailey,* for appellant.

*Henry Funkley,* for respondent.

HOLT, J.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

In the afternoon of October 12, 1924, plaintiff boarded a box car in a freight train of defendant at its yard two miles east of Crookston. The train was east bound for Cass Lake, this state. There is nothing in the pleadings or proof to show that it was other than

an intrastate train. Plaintiff was one of several men coming from the harvest fields of Dakota who were beating their way east, either unable or unwilling to pay for their passage. He claims that the train stopped at Mentor, where he, with a companion, alighted and walked towards the engine; that as they reached the tender the conductor came up and asked him if he would shovel coal; that he agreed to do so, mounted the tender and shoveled coal, as the train proceeded for an hour or so, until there was a stop at a station where the train crew had supper; that when the crew came back the head brakeman told four or five men, of whom plaintiff was one, to go back and ride in the caboose; that they did so, but when the conductor came in he drove them out, except plaintiff, who was told to remain because he had shoveled coal; that he thereupon lay down on the settee and went to sleep. About one o'clock in the morning the train stopped at Shevlin and, while standing, a passenger train from the west crashed into the freight train, the locomotive of the passenger train plowing through the caboose, the car next to it loaded with flour, and partly demolishing the third car. The locomotive was derailed. Plaintiff was found in the wreckage, unconscious, severely burned and scalded. The collision was undoubtedly due to the gross negligence of defendant, it being chargeable with the acts of those in charge of the two trains.

We do not understand that defendant seriously contends that there is no evidence to support the finding that plaintiff was in the caboose or that he was there by the conductor's permission. Those were the two chief fact issues litigated. It would seem incredible that a person inside a caboose, so plowed through as this one was by the locomotive, could survive, or come through without bones broken or flesh cut. On the other hand, it is difficult to account for the burns and scalds on the body, if he had been on top of either box car mentioned, and had rolled down from the force of the impact. We cannot hold that the physical facts demonstrate the falsity of his testimony that he was inside. Every requested instruction of defendant was given relative to those issues, and we

think the jury was warranted in accepting plaintiff's version. The jury was told there could be no recovery unless plaintiff was in the caboose and there riding with the permission of the conductor, and had no knowledge that the conductor was forbidden to give permission or the surrounding facts and circumstances were such that a reasonable person would not know that the conductor was forbidden so to do.

It does not appear from the course of the trial or the motion for judgment non obstante or a new trial that the antipass statute was urged as decisive of the case. But it is invoked in this court and, even if the record is silent as to its being called to the trial court's attention, the assignment that the verdict is not justified by the evidence and is contrary to law must be held sufficient to raise the question whether G. S. 1923, § 4807—the antipass statute—is a complete defense. It is not pretended that plaintiff paid any fare. His attorney disclaims any credit or right whatever from the coal shoveling.

Under principles adopted and applied for over 50 years in this state, the court below ruled correctly and properly submitted the issues to the jury. Jacobus v. St. P. & C. Ry. Co. 20 Minn. 110 (125), 18 Am. Rep. 360; Opsahl v. Judd, 30 Minn. 126, 14 N. W. 575; Gradin v. St. P. & D. Ry. Co. 30 Minn. 217, 14 N. W. 881; Mathews v. G. N. Ry. Co. 81 Minn. 363, 84 N. W. 101, 83 Am. St. 383; Gruhl v. N. P. Ry. Co. 140 Minn. 353, 168 N. W. 127; Marinos v. C. & N. W. Ry. Co. 142 Minn. 469, 172 N. W. 706. But it is now urged that § 4807 above cited gave plaintiff the status of trespasser in the caboose, even though the conductor in charge of the train gave him permission to be there and plaintiff was ignorant of the rules of defendant forbidding the conductor to carry anyone on that train gratuitously or otherwise. Our antipass statute follows closely the Federal act of like purport, the Hepburn Act, 34 U. S. St. 584. Both acts prohibit and penalize the receiving as well as the giving free transportation upon railroads, with certain exceptions similar to both.

Southern Pac. Co. v. Schuyler, 227 U. S. 601, 33 Sup. Ct. 277, 57 L. ed. 662, 43 L. R. A. (N. S.) 901, seems quite clearly to hold

that one transported with the consent of the carrier, though in violation of the act of Congress referred to, did not forfeit the right to recover under the local law for injuries caused by the negligence of the carrier while so carried. But in Illinois Cent. R. Co. v. Messina, 240 U. S. 395, 36 Sup. Ct. 368, 60 L. ed. 709, one who was permitted to ride free on the tender, in violation of the act, was denied recovery for injuries received through the carrier's negligence. No reference was made to the Schuyler case, either in the majority opinion or in the dissent of Mr. Justice Hughes, concurred in by Mr. Justice McKenna. Yet that case was made the most of in the briefs of both parties, and could not have been overlooked, as suggested by Judge Bourquin in U. S. v. Peterson, 1 F. (2d.) 1018. While recognizing to the fullest the desirability of following the construction and application given by the Federal Supreme Court to acts of Congress pertaining to interstate transportation in construing and applying state statutes of similar import relating to intrastate transportation, we are nevertheless so impressed with the justice of the views expressed in Southern Pac. Co. v. Schuyler, supra, which also accords with the principles of our own decisions above cited, that we deem it proper not to extend our antipass statute to consequences other than the penalties directly imposed upon a conviction for its violation. We refer to this statement in the Schuyler case:

"Neither the letter nor the spirit of the act makes an outlaw of him who violates its prohibition by either giving or accepting gratuitous interstate carriage. The deceased no more forfeited his life, limb or safety, and no more forfeited his right to the protection accorded by the local law to a passenger in his situation, than the carrier forfeited its right of property in the mail car upon which the deceased rode. His right to safe carriage was not derived, according to the law of Utah, from the contract made between him and the carrier, and therefore was not deduced from the supposed violation of the Hepburn Act. It arose from the fact that he was a human being, of whose safety the plaintiff in error had undertaken the charge. With its consent he had placed his life in its

keeping, and the local law thereupon imposed a duty upon the carrier, irrespective of the contract of carriage. The Hepburn Act does not deprive one who accepts gratuitous carriage, under such circumstances of the benefit and protection of the law of the State in this regard."

We do not think the antipass law of the state should be held applicable to this situation, where the jury has found that plaintiff, ignorant of the rule forbidding the conductor to carry anyone on this train, accepted free passage thereon, for the same reason that Justice Hughes in his dissenting opinion in Illinois Cent. R. Co. v. Messina, supra, held that the Hepburn Act should not there apply, where he says: "Congress did not concern itself with the possibility that prominent persons, or others, might steal a ride through the unauthorized action of some employee of the railroad company. Congress was concerned with the well known abuse which consisted in the giving of passes, or free transportation, by railroad companies, and it directed its legislation to that abuse." So it may be said that our legislature, in enacting the antipass section referred to, was not concerned in preventing railroad employes from letting some hobo have a free ride to or from the harvest field contrary to the rules of the carrier.

There is also room for the plausible position that the Messina case was reversed because the local law as declared by the courts of Mississippi denied damages to one who was a transgressor of a statute when injured, for the case of West. Union Tel. Co. v. McLaurin, 108 Miss. 273, 66 South. 739, L. R. A. 1915C, 487, is cited. Courts of certain other states also have declared as a proposition of law that, if the one injured through the negligence of another was at the time violating some penal law, there can be no recovery of damages regardless of whether or not the law violated was enacted to prevent accidents causing such injuries or to protect the life, limb or property of either party. Hinnant v. South. Ry. Co. 113 S. C. 19, 100 S. E. 709; Spencer v. Chicago, M. & St. P. Ry. Co. 161 Wis. 474, 154 N. W. 979.

In this state we adhere to the rule that one whose negligence has caused an injury to the person or property of another may not escape responsibility therefor by showing that the one injured or damaged was at the time violating some statute, unless such statute was enacted for the protection of the one sued or the act constituting the violation of the statute was a contributing cause to the accident which resulted in the injury or damage. Opsahl v. Judd, supra; Day v. D. St. Ry. Co. 121 Minn. 445, 141 N. W. 795; Dohm v. R. N. Cardozo & Bro. 165 Minn. 193, 206 N. W. 377. Surely, the antipass statute was not intended to protect against collisions nor to prevent trespassers or licensees upon railroad trains from being injured or from injuring the property or employes of the carrier. It is also quite obvious that plaintiff herein did not contribute to the collision of the trains. He was asleep in a proper car for passengers when carried upon freight trains. It may be claimed that plaintiff, because of the existence of § 4807, is charged with knowledge that the conductor had no authority to carry him gratis, and that his presence in the caboose constituted him a lawbreaker. It is true that the fiction obtains in all criminal prosecutions that the accused may not plead ignorance of the statute he is charged with violating. But it cannot be accepted as true that in civil actions the parties concerned must be charged with knowledge of every criminal statute or ordinance which may be invoked as having some incidental bearing upon the issues of fact involved.

We think defendant was not entitled to a directed verdict, the issues were correctly submitted, and the verdict rendered is sustained by the evidence.

Only minor matters are urged as grounds for a new trial, apart from the one that the verdict lacks support. We can see no abuse of judicial discretion in reopening the case to inquire of plaintiff as to his knowledge of the rule of defendant forbidding the conductor to allow passengers on this train, or without pay, even if defendant were in a position to challege the ruling, which it is not, for, though there was an objection, no exception was taken at the trial to the ruling nor on the motion for a new trial. Whether there

was justification for the claim of surprise and whether the alleged newly discovered evidence contradicting that of plaintiff's companion in certain respects was of sufficient importance, cumulative as it was, to warrant a new trial, was also for the discretion of the trial court. On neither proposition can it be said that there was an abuse of judicial discretion.

The order is affirmed.